STATE FARM FIRE & CASUALTY COMPANY ET AL., APPELLEES, *v.*
CHRYSLER CORPORATION ET AL., APPELLANTS.

[Cite as State Farm Fire & Cas. Co. *v.* Chrysler Corp. (1988),
37 Ohio St. 3d 1.]

2

(No. 87-202—Submitted December 2, 1987—Decided May 18, 1988.)

*Young & Alexander Co., L.P.A.,* and *Mark R. Chilson,* for appellees.

*Thomas D. Hunter* and *Andrew W. Cecil,* for appellant Chrysler Corp.

*Green & Green, F. Thomas Green* and *Sam G. Caras,* for appellant Morningstar Chrysler Plymouth.

MOYER, C.J.

## I

We are presented at the outset with an issue of procedure concerning the scope of remand ordered by the court of appeals. This court has articulated the general rule that "App. R. 12(D) and Civ. R. 42(B) together authorize a court of appeals to order a retrial of only those issues which resulted in prejudicial error."[2] *Charles R. Combs Trucking, Inc.* v. *International Harvester Co.* (1984), 12 Ohio St. 3d 241, 12 OBR 322, 466 N.E. 2d 883, paragraph one of the syllabus; *Mast* v. *Doctor's Hospital North* (1976), 46 Ohio St. 2d 539, 75 O.O. 2d 556, 350 N.E. 2d 429. See, also, *Trauth* v. *Dunbar* (1983), 5 Ohio St. 3d 68, 5 OBR 123, 448 N.E. 2d 1368. As explained in *Mast, supra,* at 541-542, 75 O.O. 2d at 557, 350 N.E. 2d at 430, "App. R. 12(D) vests the court with the necessary authority to order a trial court to exercise its powers under Civ. R. 42(B) to separately try any claim or issue, when such separation is 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.' Civ. R. 42(B)."

In *Mast* and *Combs,* the issues of liability and damages were found severable for purposes of remand when prejudicial error existed only with respect to the determination of damages. The present case concerns severability of separate claims of liability where prej-

udicial error is found with respect to only one claim.

While worded in strong terms, the syllabus of *Combs* falls short of being mandatory, and the rationale authorizing reviewing courts to order a limited remand implicitly recognizes the need for appellate courts to carefully exercise their discretion to determine the appropriate scope of remand. *Mast* v. *Doctor's Hospital North, supra.*

Here, the court of appeals ordered retrial of all issues raised by the pleadings. Although plaintiffs abandoned their various warranty claims on appeal, the court's remand for retrial revived those claims, clearly prejudicing defendants and constituting error. Additionally, we note that the warranty claims are not necessary to the determination of the remaining claims on remand. Indeed, in oral argument before this court, plaintiffs' counsel sought only a limited remand of the strict liability and negligent repair claims. It is to these claims we now turn.

## II

### A

First articulated in *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227, 35 O.O. 2d 404, 218 N.E. 2d 185, it is now well-settled that "[i]n products liability cases involving defects in automobiles, the plaintiff's burden of proof consists of alleging and proving, by a preponderance of the evidence,

---

[2] App. R. 12(D) states:

"All other cases. In all other cases where the court of appeals finds error prejudicial to the appellant, the judgment or final order of the trial court shall be reversed and the cause shall be remanded to the trial court for further proceedings."

Civ. R. 42(B) states:

"Separate trials. The court, after a hearing, in furtherance of convenience or to

avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right to trial by jury."

that: (1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 65 O.O. 2d 374, 304 N.E. 2d 891, paragraph two of the syllabus; *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267; *Friedman* v. *General Motors Corp.* (1975), 43 Ohio St. 2d 209, 72 O.O. 2d 119, 331 N.E. 2d 702; *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 277, 286, 31 OBR 559, 566, 511 N.E. 2d 373, 380.

Product defects may be proven by direct or circumstantial evidence. Where direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated. *Friedman* v. *General Motors Corp., supra*; *State Auto. Mut. Ins. Co.* v. *Chrysler, supra.*

### B

The history of strict products liability in Ohio was recently reviewed in *Bowling* v. *Heil Co., supra,* at 279-282, 31 OBR at 561-563, 511 N.E. 2d at 375-377. Related to the adoption of Section 402A of the Restatement of the Law 2d, Torts (1965), was the recognition that product defects may be proven by applying a consumer-expectation standard. *Temple* v. *Wean United, Inc., supra.* Applicable to both manufacturing and design defects, this standard now states that a product may be proven to be in a defective condition if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 21 O.O. 3d 285, 424 N.E. 2d 568, paragraph two of the syllabus; *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 23 O.O. 3d 403, 432 N.E. 2d 814, syllabus; *Cremeans* v. *International Harvester Co.* (1983), 6 Ohio St. 3d 232, 6 OBR 302, 452 N.E. 2d 1281, syllabus.[3] This standard "* * * recognizes the legitimacy of one of the fundamental values in the law of torts: 'the protection of the individuality of persons, by according formal respect for their fairly developed expectations of product safety * * *.' [Citation omitted.]"[4] *Leichtamer, supra,* at 467, 21 O.O. 3d at 292, 424 N.E. 2d at 577.

As applied to manufacturing defect cases, evidence of unsafe, unexpected performance of a product, while sufficient to infer the existence of a

---

[3] *Knitz* v. *Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 23 O.O. 3d 403, 432 N.E. 2d 814, and *Cremeans* v. *International Harvester Co.* (1983), 6 Ohio St. 3d 232, 6 OBR 302, 452 N.E. 2d 1281, have modified the Restatement test to "dispense with any requirement for strict liability in tort that a defect be unreasonably dangerous." *Knitz, supra,* at 465, 23 O.O. 3d at 406, 432 N.E. 2d at 817, fn. 2; *Bowling* v. *Heil Co., supra,* at 282, 31 OBR at 563, 511 N.E. 2d at 377.

[4] Reflecting the common-law heritage of strict liability in Ohio, the formal respect accorded consumer expectations echoes the standard under "implied warranty in tort" where a product was found defective if "not 'of good and merchantable quality, fit and safe for * * * [its] ordinary intended use.' *Lonzrick, supra,* at 235 [35 O.O. 2d at 409, 218 N.E. 2d at 191]." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, at 321, 4 O.O. 3d 466, at 468, 364 N.E. 2d 267, at 270.

defect, satisfies but one of the three elements necessary for recovery. Plaintiffs are still required to demonstrate by a preponderance of direct or circumstantial evidence that the claimed defect was present when the product left the hands of the manufacturer and proximately caused the claimed injuries.

In design defect cases, the consumer-expectation standard is one of two alternatives available to determine whether a product design is in a defective condition. Subsequent to development of the consumer-expectation standard a second, alternative, risk-benefit standard was adopted for proving design defects.[5] However, since plaintiffs have not asserted the risk-benefit theory as a basis for recovery, we need not consider it further. Rather, we shall consider the consumer-expectation standard, under which we have held that "* * * a defendant will be subject to liability if the plaintiff proves that the product design is in a defective condition because the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Cremeans* v. *International Harvester Co., supra,* syllabus; *Knitz, supra; Leichtamer, supra.*

As in manufacturing defect cases, proof of liability in design defect cases still requires that the three elements of *Lonzrick* be satisfied. Thus, first, under the consumer-expectation standard, evidence of unsafe, unexpected product performance is sufficient to infer the existence of a product defect. Next, absent substantial change in the

condition in which the product was sold (*e.g., Temple* v. *Wean United, Inc., supra,* at paragraph one of the syllabus; *King* v. *K. R. Wilson Co.* [1983], 8 Ohio St. 3d 9, 8 OBR 79, 455 N.E. 2d 1282), it may also be inferred that the design defect was present when the product left the hands of the manufacturer. Finally, to fix liability for a design defect, it remains incumbent upon a plaintiff to establish the element of causation — to prove by a preponderance of the evidence that it was some aspect of the challenged design which rendered the product's performance less safe than the ordinary consumer would expect, resulting in injury.

The element of causation has been implicit, yet unstated, in our previous formulations of strict liability for design defects under the consumer-expectation standard. The need to establish causation between some aspect of the challenged design and the claimed injuries is illustrated by cases decided by this court. In *Knitz,* it was alleged that the defective design of a foot switch and point of operation guard on a press permitted the operator's hands to enter the danger area, resulting in injury. In *Leichtamer,* the plaintiff's injuries were found to have been enhanced by the collapse of an underdesigned roll bar on a Jeep.

It is apparent that the expectation of the ordinary consumer, while accorded formal respect, is not the only element necessary to establish liability for design defects. If it were, a simplistic application of the consumer-expectation test to prove injurious

---

[5] "[U]nder the risk-benefit standard prong, a defendant will be subject to liability if the plaintiff proves, by using relevant criteria, that the product design is in a defective condition because the benefits of

the challenged design do not outweigh the risks inherent in such design." *Cremeans* v. *International Harvester Co., supra,* syllabus.

product performance unexpected by the consumer would result in liability for a "design defect" where, in fact, a manufacturing defect or negligent repair by another party may have been the underlying cause of injury. Claimants would quickly abandon these latter two theories in their rush to prove a "design defect" — which would become synonymous with absolute liability. The causation requirement that is made explicit today maintains the distinction between strict liability based on design defects and absolute liability based upon injury.

### C

In addition to their strict liability claims, plaintiffs have also asserted a claim of negligent repair against Morningstar. The law in this area is clear.

In addressing allegations of negligent repair, this court has held that, while "one who contracts to repair or service an automobile is liable for any damage proximately resulting from the negligent or unskillful manner in which he makes the repairs or performs the services, * * * such repairman is not liable for an alleged failure to discover a latent defect, unless the evidence shows that he undertook to discover such defect and negligently failed to do so." *Landon* v. *Lee Motors, Inc.* (1954), 161 Ohio St. 82, 53 O.O. 25, 118 N.E. 2d 147, paragraph seven of the syllabus. See *State Auto. Mut. Ins. Co.* v. *Chrysler Corp., supra,* at paragraph three of the syllabus.

We turn now to consideration of plaintiffs' evidence in support of their strict liability and negligent repair claims.

### III

Presented with the consumer-expectation standard for design defects, plaintiffs cite the fact of the fire and essentially argue that the Mowen automobile failed to perform as safely as an ordinary consumer would expect when used in its intended or reasonably foreseeable manner. While proceeding to exclude possible causes of the fire other than design defects, plaintiffs presented no expert analysis or other evidence demonstrating that some aspect of the design of the Chrysler K-car would or could result in electrification or overheating of components and/or wiring sufficient to cause an auto fire when the ignition was turned off. Where products fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, strict liability for a design defect is not proven absent proof of causation relating some aspect of the challenged design to the injury.

Upon this record, we conclude that the directed verdict was properly rendered on plaintiffs' claim of design defect.

The question remains whether plaintiffs presented sufficient evidence to permit reasonable minds to differ as to whether a manufacturing defect existed in the automobile at the time it left the defendants, which defect proximately caused the fire.

As stated above, the mere fact that a fire consumes an automobile is insufficient, alone, to demonstrate causes of action in strict products liability. While a fire in a relatively new automobile "cries out for explanation" (see *Vernon* v. *Lake Motors* [1971], 26 Utah 2d 269, 274, 488 P. 2d 302, 306), it is the plaintiffs' burden to respond with evidence which will permit a jury to go beyond speculation and render a judgment in accordance with law. Manufacturers are not insurers of their products. See *Menifee* v. *Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 15 OBR 179, 472 N.E. 2d 707, syllabus.

In the absence of direct proof of a

specific defect, plaintiffs sought to show by circumstantial evidence, and by elimination of other possible causes, that a nonspecific manufacturing defect in the electrical system of the subject automobile caused the vehicle to burn. *Friedman* v. *General Motors Corp., supra; State Auto. Mut. Ins. Co.* v. *Chrysler Corp., supra.*

We first consider the history of repairs in this case. Reviewing and construing the record before us in favor of plaintiffs, we find no evidence to connect the failure of various electrical components shortly after delivery of the car to the Mowens with the loss of power problems experienced by the Mowens four months later. Although plaintiffs have argued that the automobile's repair history evidences some inherent electrical defect, no evidence was presented to tie the history of component failure to allegedly defective electrical wires located under the dashboard. No expert analysis or evidence demonstrated which, if any, wires in the area under the dash, if electrified, might have caused the components to fail; or why, if an electrical defect caused component failure, four months elapsed between these failures and the fire. Further, no evidence was presented to identify wires which might have, in turn, been electrified by failure of any of the various components. The possibilities are left to speculation. Even upon a favorable construction, a leap of logic is required to infer the existence of an inherent electrical defect from the automobile's repair history.

Next, we consider the expert and other testimony presented by plaintiffs.

Our review of the SEA report submitted by plaintiffs' experts reveals their conclusions that:

"1. The fire origin was within the K-car in or about the dashboard.

"2. The cause of the fire is believed to have been electrical in nature but could not be positively identified due to the total destruction of the wiring and electrical components."

These conclusions were reached by SEA's experts by eliminating other causes and by consideration of circumstantial evidence. The experts' opinions concerning location, origin, and nature of the fire are supported by the Mowens' testimony that, while on a trip several days before the fire, they experienced a loss of power, observed a generator warning light, and detected an odor of burning inside the car; and by the experts' own observations concerning the burn pattern, duration, and intensity of the fire. Yet, even when construed in favor of plaintiffs, this evidence does not permit reasonable minds to conclude that the source of the fire was a manufacturing defect in the electrical wiring present *when the automobile left the hands of the manufacturer.* That is, while reasonable minds might differ as to whether the electrical system developed a defect — upon which there is substantial evidence, and which is supported by application of the consumer-expectation test — they cannot differ upon the evidence presented, absent speculation, as to whether some defect was present when the vehicle left the hands of the manufacturer. It is equally likely that the defect arose as the result of negligent repair when Morningstar removed the dashboard of the Mowen vehicle.

By contrast, evidence presented in other products liability cases before this court demonstrated that the claimed defects were present at the time the products left the hands of the manufacturer. For example, defects identified in *Friedman, supra* (factory-

set transmission adjustments and linkages), and *State Auto. Mut. Ins. Co.* v. *Chrysler Corp., supra* (inherent defect in original equipment evidenced by outward rupture of brake hose), were of a type which could only have arisen in the manufacturing process. See, also, *Cincinnati Ins. Co.* v. *Volkswagen of America, Inc.* (1985), 29 Ohio App. 3d 58, 29 OBR 68, 502 N.E. 2d 651 (shorting and arcing of main electrical cable harness installed by manufacturer).

We conclude that plaintiffs' evidence does not meet the test. Reasonable minds cannot differ but, rather, must speculate as to whether an electrical defect was present when the Mowens' vehicle *left the hands of the manufacturer*. Accordingly, we affirm the directed verdict on plaintiffs' manufacturing defect claim.

Finally, in support of their claim of negligent repair by Morningstar, plaintiffs allege that, as the car was under warranty, only Morningstar performed repairs on the Mowen automobile, and that only Morningstar, who once removed the dash, and the manufacturer, Chrysler, had access to the wiring under the dashboard claimed to be the origin of the fire.

We find, however, that the record is devoid of evidence concerning the standard of care or ordinary skill of the profession, which is a necessary predicate to establish the duty allegedly breached by the defendants. In addition, there is no evidence that Morningstar failed to take reasonable steps to determine why various electrical components failed; or that an undiagnosed defect, which should have been discovered in the exercise of ordinary skill, proximately caused the fire; or that the auto was rendered defective as a result of Morningstar's efforts to repair. We, therefore, find the directed verdict was properly granted defendants upon the claims of negligent repair.

The decision we reach today does not seek to modify the rights of plaintiffs to recover for injuries caused by product defects under the common law of strict products liability, but merely constitutes an application of the law to evidence presented which, when construed in favor of plaintiffs, is insufficient to overcome the defendants' motion for directed verdict.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and CORRIGAN, JJ., concur.

JOHN V. CORRIGAN, J., of the Eighth Appellate District, sitting for H. BROWN, J.