OPINION JUDGMENT ENTRY
{¶ 1} Appellants Viva Turner and Tyler Lightle[1]
appeal the decision of the Fairfield County Court of Common Pleas that granted Appellee iSecuretrac Corporation a.k.a. Advanced Business Sciences Inc.'s ("iSecuretrac") motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} On June 4, 2000, Appellant Viva Turner charged her husband, David Turner, with domestic violence and assault. On June 5, 2000, the Fairfield County Municipal Court issued a civil protection order on behalf of Appellant Viva Turner. At a hearing conducted before the trial court, on June 9, 2000, the trial court placed Turner on bond with a condition that he wear a GPS monitoring device manufactured and supplied by iSecuretrac. The trial court also ordered Turner to leave Fairfield County and go to a residence on Catawba Island near Lake Erie. The trial court ordered Turner not to return to Fairfield County without the permission of the trial court.
 {¶ 3} The device supplied by iSecuretrac had a transmitter. When placed on Turner's ankle it would transmit information about his location to the Fairfield County Probation Department and the Fairfield County Sheriff. The transmitter would also notify the probation department and sheriff if Turner left his designated area near Lake Erie. However, the device does not transmit information in "real time" because the information has to be downloaded upon the wearer's return home.
 {¶ 4} The device intended to be placed on Turner's ankle did not operate properly. Carl Stone, a probation officer, attempted to contact Judge McAuliffe, the trial court judge assigned to the case, but was unable to do so. Thereafter, Mr. Stone went to Judge Martin's residence for assistance. Mr. Stone called iSecuretrac, from Judge Martin's residence, and attempted to go through a step-by-step procedure to activate the GPS monitoring device. However, the device still did not operate properly.
 {¶ 5} Appellants claim that during Mr. Stone's conversation, iSecuretrac promised Mr. Stone that it would overnight a new device on June 9, 2000. iSecuretrac disputes this claim and instead maintains its phone log indicates Mr. Stone agreed to the shipping of another device on June 12, 2000, with its delivery intended for June 13, 2000.
 {¶ 6} On June 9, 2000, Turner went to the residence on Catawba Island without the device on his ankle. The new device did not arrive on June 10, 2000, as appellants claim they thought it would. Thus, on June 12, 2000, Mr. Stone called the chief of police, on Catawba Island, and asked him to check on Turner to make sure he was at the address. The police on Catawba Island informed Mr. Stone that Turner was at the designated address.
 {¶ 7} On June 13, 2000, prior to the device arriving, two officers from the Fairfield County Probation Department went to Catawba Island to check on Turner's whereabouts. The probation officers talked to Turner and made arrangements to meet him in Reynoldsburg, Ohio, on June 15, 2000, for the purpose of placing the new device on his ankle. On June 15, 2000, prior to being fitted with the new device, Turner broke into the residence of Appellant Viva Turner and assaulted her causing serious injuries to her which required treatment at a hospital. As a result of this incident, Turner pled guilty to criminal charges and was sentenced to fifteen years in jail.
 {¶ 8} On February 13, 2001, appellants filed a complaint. Appellants dismissed the complaint, without prejudice, on January 30, 2002. Appellants filed a motion for a first amended complaint on February 4, 2002. The trial court granted leave to appellants on February 6, 2002. Thereafter, iSecuretrac filed a motion for summary judgment. In a memorandum decision dated July 21, 2003, the trial court granted iSecuretrac's motion for summary judgment.
 {¶ 9} Appellants filed a motion to reconsider summary judgment on July 23, 2003. On July 25, 2003, appellants filed a deposition upon written questions per Civ.R. 31 of Judge Chris Martin. On September 4, 2003, the trial court issued a memorandum opinion denying appellant's motion to reconsider summary judgment. On September 4, 2003, the trial court entered its judgment granting iSecuretrac's motion for summary judgment.
 {¶ 10} Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 {¶ 11} "I. The trial court erred when it did not fully reconsider whether it should allow plaintiff-appellants to conduct discovery to prove that defendant-appellee's product was defective.
 {¶ 12} "II. The trial court erred in granting summary judgment to the defendant-appellee.
 {¶ 13} "III. The trial court erred when it held that defendant-appellee was not negligent in failing to provide an immediate replacement for the defective device when it knew the circumstances surrounding the protection of the plaintiff-appellants.
 {¶ 14} "IV. The trial court erred when it held that defendant-appellee's device was not defective.
 {¶ 15} "V. The trial court erred when it did not find that plaintiff-appellants were intended third-party beneficiaries of the contract between Fairfield County and defendant-appellee.
 {¶ 16} "VI. The trial court erred when it did not allow plaintiff-appellants to fully conduct discovery under the Ohio Rules of Civil Procedure."
 "Summary Judgment Standard {¶ 17} "Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 18} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 19} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, citing Dresher v. Burt, (1996),75 Ohio St.3d 280.
 {¶ 20} It is based upon this standard that we review appellants' assignments of error.
 I, VI {¶ 21} We will address appellants' First and Sixth Assignments of Error simultaneously as both concern discovery issues. In their First Assignment of Error, appellants contend the trial court erred when it did not fully reconsider whether it should have allowed them to conduct discovery to prove that iSecuretrac's device was defective. Appellants maintain, in their Sixth Assignment of Error, the trial court erred when it did not allow them to fully conduct discovery under the Ohio Rules of Civil Procedure. We disagree with both assignments of error.
 {¶ 22} A motion for reconsideration will not be disturbed on appeal absent an abuse of discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 23} In support of their First Assignment of Error, appellants maintain the trial court should have permitted them to conduct discovery, by deposing Judge Martin pursuant to Civ.R. 31, in order to establish a manufacturing defect in the GPS unit. Appellants claim Judge Martin's testimony is important because he was present when the device did not work and when Carl Stone telephoned iSecuretrac regarding the unit. Appellants maintain Judge Martin's testimony is pertinent to their claims for product liability, negligence and breach of contract.
 {¶ 24} The trial court did not abuse its discretion when it denied appellants' motion for reconsideration. In a pretrial order, the trial court set May 15, 2003, as the discovery cut-off date. See Telephone Conference Notice, Oct. 11, 2002. Although appellants conducted depositions in August and November of 2002, they never sought to depose Judge Martin during this time period. Appellants only sought to depose Judge Martin in July 2003, after iSecuretrac filed its motion for summary judgment and more than one year after the discovery cut-off date. Therefore, the trial court properly denied appellants' motion to reconsider summary judgment.
 {¶ 25} In support of their Sixth Assignment of Error, appellants contend they were denied the right to fully conduct discovery because they were not permitted to depose Judge Martin by written questions pursuant to Civ.R. 31. Appellants cite Civ.R. 56(F) in support of their argument. This rule provides:
 {¶ 26} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 27} Although appellants cite the above rule, the record indicates they did not seek relief, in the trial court, under Civ.R. 56(F). It was in the trial court's discretion whether to permit appellants' to depose Judge Martin by written questions. We do not find the trial court abused its discretion when it denied appellants' request because the request was made beyond the discovery cut-off date and after the trial court filed its memorandum decision concerning iSecuretrac's motion for summary judgment.
 {¶ 28} Appellants' First and Sixth Assignments of Error are overruled.
 II, III, IV {¶ 29} We will address appellants' Second, Third and Fourth Assignments of Error simultaneously as these assignments of error are related. In their Second Assignment of Error, appellants maintain the trial court erred when it denied their claims for product liability and negligent reissuing. Appellants contend, in their Third Assignment of Error, the trial court erred when it held that iSecuretrac was not negligent when it failed to provide an immediate replacement for the defective GPS monitoring device based upon its knowledge of the circumstances surrounding Viva Turner's protection. In their Fourth Assignment of Error, appellants contend the trial court erred when it determined that iSecuretrac's device was not defective. We disagree with these assignments of error.
 {¶ 30} Appellants maintain iSecuretrac is negligent because it furnished a defective GPS monitoring device and did not immediately re-issue a new device once it learned the original device did not work. In concluding otherwise, the trial court found that appellants presented no evidence as to whether a manufacturing defect existed, in the GPS monitoring device, at the time it left iSecuretrac. Memorandum of Decision, July 16, 2003, at 4. The trial court further concluded that because there was no evidence of a defect, the court need not address whether the alleged defect was the proximate cause of the harm suffered by Appellant Viva Turner. Id.
 {¶ 31} Appellants base their products liability claim on R.C.2307.74. This statute provides as follows:
 {¶ 32} "A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards. * * *"
 {¶ 33} In order to prevail on a claim for products liability, a plaintiff must demonstrate, by a preponderance of the evidence, that: (1) there was a defect in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.Sheets v. Karl W. Schmidt Assoc., Inc. Hamilton App. No. C-020726, 2003-Ohio-3198. The plaintiff must prove the defect existed at the time the product left the manufacturer in order to establish a prima facie case. State Farm Fire Cas. Co. v.Chrysler Corp. (1988), 37 Ohio St.3d 1, 5-6, superseded by statute. See Perkins v. Wilkinson Sword, Inc.83 Ohio St.3d 507, 1998-Ohio-16.
 {¶ 34} Appellants cite the case of State Farm Fire Cas.Co. v. Chrysler Corp., supra, for the proposition that product defects may be proven by circumstantial evidence "* * * where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." Id. at 6. The Ohio Supreme Court concluded, in State Farm, that the trial court properly granted a directed verdict in favor of the defendants because the mere fact that the vehicle in question malfunctioned and caught on fire did not establish the vehicle was defective when it left the control of the manufacturer. Id. at 10.
 {¶ 35} Specifically, the Court stated:
 {¶ 36} "While a fire in a relatively new automobile `cries out for explanation' * * *, it is the burden to respond with evidence which will permit a jury to go beyond speculation and render a judgment in accordance with law. Manufacturers are not insurers of their products. [Citations omitted.] Id. at 8.
 {¶ 37} "* * *
 {¶ 38} "We conclude that plaintiffs' evidence does not meet the test. Reasonable minds cannot differ but, rather, must speculate as to whether an electrical defect was present when the Mowens' vehicle left the hands of the manufacturer." (Emphasis sic.) Id. at 10.
 {¶ 39} We have reviewed the record in this matter and find no evidence to support appellants' argument that the GPS monitoring device was defective when it left iSecuretrac's facility. It is possible the device was previously damaged by another felon, broken during shipping or damaged while stored at the Fairfield County Probation Department. Without evidence to indicate otherwise, it is merely speculation to conclude the GPS monitoring device was defective when it left the control of iSecuretrac.
 {¶ 40} Appellants also argue, under their Second Assignment of Error, that iSecuretrac is responsible for the assault on Viva Turner because her husband should have been wearing a monitoring device or should have reissued a new device to the probation department. Appellants conclude the defective GPS monitoring device as well as iSecuretrac's failure to reissue a new device were the proximate causes of Viva Turner's injuries.
 {¶ 41} Ohio has never recognized a claim in tort for "negligent reissuing." Further, at his deposition, Carl Stone testified that he asked iSecuretrac if they could overnight a new GPS monitoring device to him but he does not recall what iSecuretrac told him. Deposition, Carl Stone, at 34. The record does contain iSecuretrac's call log which indicates that on June 10, 2000, iSecuretrac agreed to reissue another GPS monitoring device to be shipped on Monday June 12, 2000. The call log also indicates that Carl Stone called iSecuretrac on June 12, 2000, to check on the status of the new device and was informed that it had been shipped and should arrive on Tuesday, June 13, 2000.
 {¶ 42} Based upon the evidence, we conclude a question of material fact does not exist regarding appellants' claim of "negligent reissuing." The record indicates iSecuretrac shipped the new GPS monitoring device on the date it indicated it would do so according to the evidence submitted by iSecuretrac in support of its motion for summary judgment.
 {¶ 43} Appellants next argue the trial court erred when it granted iSecuretrac's motion for summary judgment as it pertained to their misrepresentation theory of product liability. In support of this claim, appellants maintain the GPS monitoring device was defective when it left iSecuretrac's control because it deviated, in a material way, from design specifications and/or performance standards of the manufacturer as well as material representations to the consumer and public in its product literature.
 {¶ 44} We conclude the trial court properly granted summary judgment on this claim. First, as noted above, there is no evidence the device left iSecuretrac in a defective condition. Second, appellants' misrepresentation claim is based upon product literature, which is the subject of a motion to strike. We previously granted the motion to strike this literature because it was never made a part of the record at the trial court level. Therefore, appellants cannot rely upon this literature in support of their claim.
 {¶ 45} Appellants also claim a product defect may be proven by applying the consumer-expectation standard. This standard provides that a product may be proven to be in a defective condition if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.State Farm Fire Cas. Co., supra, at 6. The consumer-expectation test is inapplicable to the case sub judice because there is no evidence the GPS monitoring device was defective when it left iSecuretrac's control. Further, this standard requires the product to be in use when the injuries occurred. However, the device was not in use when Viva Turner sustained her injuries.
 {¶ 46} Finally, we agree with the trial court's conclusion that appellants cannot establish the GPS monitoring device caused the injuries to Viva Turner. Appellants' proximate cause argument fails for two reasons. First, even if the GPS monitoring device had been attached to David Turner on the day he assaulted Viva Turner, the device does not track an individual's movements in real time. Instead, the device provides the person's whereabouts only after it is plugged into a storage box on the phone line and the information is downloaded from the GPS monitoring device, by iSecuretrac, and relayed to the probation department.
 {¶ 47} Second, evidence in the record indicates the replacement GPS monitoring device arrived at Carl Stone's residence two days before David Turner assaulted Viva Turner. The replacement device arrived on June 13, the same day Carl Stone traveled to Catawba Island to check on the whereabouts of Turner. Thus, Viva Turner's injuries were not proximately caused by a defective GPS monitoring device since a new device was available for use two days prior to David Turner's assault of Viva Turner.
 {¶ 48} Appellants' Second, Third and Fourth Assignments of Error are overruled.
 V {¶ 49} In their Fifth Assignment of Error, appellants contend the trial court erred when it did not find they were intended third-party beneficiaries of the contract between the probation department and iSecuretrac. We disagree.
 {¶ 50} In Hill v. Sonitrol of Southwestern Ohio, Inc.
(1988), 36 Ohio St.3d 36, the Ohio Supreme Court set forth the test to determine if a third party is an intended or incidental beneficiary of a contract. The Court stated as follows:
 {¶ 51} "`If the promisee * * * intends that a third party should benefit from the contract, then that third party is an `intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an "incidental beneficiary," who has no enforceable rights under the contract.
 {¶ 52} "` * * * [T]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary.'" Id. at 41.
 {¶ 53} Appellants contend they are intended third-party beneficiaries of the contract entered into between iSecuretrac and the Fairfield County Probation Department based upon language contained in the contract. Specifically, appellants rely on the language that provides, it is "* * * in the public interest * * * that * * * suitable alternative to * * * incarceration * * * will promote reintegration into society of the Restricted Persons without jeopardizing the public safety." Appellants also maintain the GPS monitoring device was designed and intended to benefit the public and therefore, they were intended third-party beneficiaries to the contract.
 {¶ 54} We find the Sonitrol case applicable to the case sub judice. In Sonitrol, the defendant provided a security system to a bookstore. Id. at 36. As the bookstore was closing for the evening, an assailant, with a knife and gun, accosted an employee of the bookstore. Id. Even though the security company installed a panic button, in the store, for the employees, the Ohio Supreme Court held the employees were only incidental beneficiaries of the installation of the security system and not intended third-party beneficiaries of the contract. Id. at 40. The Court based its conclusion upon the fact that the defendant had no statutory duty to protect the employees from the action of third parties and the contract did not impose such a duty. Id. at 42.
 {¶ 55} As in Sonitrol, in the matter currently before the court, appellants have not established they were intended third-party beneficiaries to the contract between iSecuretrac and the Fairfield County Probation Department. The language cited by appellants, in the contract, does not impose a duty on iSecuretrac to protect appellants nor does a statutory duty exist to do so. This conclusion is also supported by the fact that the GPS monitoring device did not transmit information regarding David Turner's whereabouts in real time. Accordingly, we conclude the trial court properly granted iSecuretrac's motion for summary judgment as it pertains to appellants' breach of contract claim.
 {¶ 56} Appellants' Fifth Assignment of Error is overruled.
 {¶ 57} For the foregoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.
Judgment affirmed.
Hoffman, P.J., and Boggins, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.
Costs assessed to Appellants.
[1] Tyler's claim for emotional distress is the result of witnessing his grandfather, David Turner, assault his grandmother, Appellant Viva Turner, on June 15, 2000.