OPINION
{¶ 1} Plaintiff-appellant, Triplex Company (hereinafter "Triplex"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee Alcoa Home Exteriors, Inc., formerly known as Alcoa Building Products (hereinafter "Alcoa"). For the reasons that follow, we reverse and remand.
 {¶ 2} In December 1987, plaintiff and defendant R.L. Pomante ("Pomante") entered into a contract which provided that Pomante would install "Mastic vinyl siding," an Alcoa product[1]
(hereinafter "the vinyl siding"), at plaintiff's property located at 6631 Commerce Parkway, Dublin, Ohio. Subsequently, plaintiff and Pomante entered into a second contract whereby Pomante agreed to install the vinyl siding at plaintiff's property located at 6543 Commerce Parkway, also in Dublin, Ohio. It has been alleged that within months after the vinyl siding was installed by Pomante, minor problems with the siding arose as the seasons changed, and Pomante attempted to correct those issues. However, despite attempts to correct the problems, it is alleged that sections of the vinyl siding buckled, bulged, and detached from the buildings. It is undisputed that the vinyl siding originally installed by Pomante was covered by a manufacturer's express warranty which provided, in part, as follows: "Subject to the exclusions and limitations set forth in this Warranty, Mastic warrants that the Products [including the vinyl siding] are free from defects in material and workmanship in the course of manufacture if installed according to the manufacturer's specifications."[2] It is further undisputed that plaintiff, as the original owner of the property on which the vinyl siding was applied, held rights under the terms of the express warranty. In this regard, the warranty provided that "[i]f, at the time the Products are originally applied to the property, the property is owned by other than an individual(s), such as in the case of a corporation * * * the warranty period shall be 50 years from the date of original installation of the Products."
 {¶ 3} On June 18, 2003, Triplex filed a complaint against Alcoa and Pomante, alleging breach of contract, breach of warranty, and breach of implied warranty of fitness in connection with the vinyl siding that was placed on the two commercial buildings owned by Triplex. Specifically, Triplex alleged that, after initial installation, pieces of the vinyl siding were detaching from the building and falling, and that despite numerous attempts to repair the siding, it continued to fall off the building. Triplex alleged that the vinyl siding, a product of Alcoa, was defective.
 {¶ 4} On February 13, 2004, Alcoa filed a third-party complaint against Ball Enterprises, Inc., and Ball and Sons Contractors, Inc. (collectively referred to as "Ball and Sons"), alleging that, in October 1998 and June 1999, Ball and Sons was hired to perform siding repair work on the two commercial properties, and that Ball and Sons was negligent in that attempted repair work. Alcoa alleged its entitlement to contribution or indemnification from Ball and Sons, in the event it was found liable to Triplex.
 {¶ 5} On December 30, 2004, third-party defendant Ball Enterprises, Inc., filed a motion for summary judgment as to Alcoa's third-party complaint. On January 14, 2005, Triplex filed a motion for summary judgment. Alcoa also filed a motion for summary judgment on that day. On September 29, 2005, the trial court issued a decision denying Triplex's motion for summary judgment, granting Alcoa's motion for summary judgment, and granting Ball Enterprises, Inc.'s motion for summary judgment. In its decision, the trial court determined that Triplex's proposed expert, Hal Dunham, a mechanical engineer, was not qualified to offer an opinion regarding whether the vinyl siding had a manufacturing defect. In addition, the trial court essentially determined that without that expert testimony, Triplex failed to offer specific facts showing that there is a genuine issue for trial. On October 24, 2005, defendant Pomante was dismissed as a party in the action. The trial court entered judgment on November 1, 2005.
 {¶ 6} Triplex appeals and has asserted the following two assignments of error for our review:
FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE ALCOA'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS FOR BREACH OF EXPRESS WARRANTY AND BREACH OF CONTRACT BY FINDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED FOR RESOLUTION BY A JURY THAT THE VINYL SIDING WAS DEFECTIVE.
SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN GRANTING APPELLEE ALCOA'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT TWO OF APPELLANT-PLAINTIFF'S COMPLAINT BY DEEMING APPELLANT'S EXPERT'S OPINION INADMISSIBLE IN ITS DECISION ON SUMMARY JUDGMENT.
 {¶ 7} Both of Triplex's assignments of error allege that the trial court erred in granting summary judgment in favor of Alcoa. Appellate review of a trial court's granting of summary judgment is de novo. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates that: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 8} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. In other words, the burden of demonstrating an entitlement to summary judgment rests with the moving party who must direct the court's attention to properly admissible evidence which demonstrates that the nonmoving party cannot support his or her claim or defense. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Vahila v. Hall (1997),77 Ohio St.3d 421, 430; Civ.R. 56(E). In doing so, the nonmoving party may not simply rest upon the claims or allegations contained in the party's complaint or briefs. Carl L. Brown, Inc. v. LincolnNatl. Life Ins., Franklin App. No. 02AP-225, 2003-Ohio-2577, at ¶ 31, citing Dresher; see Civ.R. 56(E). The nonmoving party need not try his or her case at this stage, but must produce more than a scintilla of evidence in support of the claims presented. Succinctly, viewing all facts in a light most favorable to the nonmoving party, the court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Turner v. Turner (1993), 67 Ohio St.3d 337,340.
 {¶ 9} Under its first assignment of error, Triplex argues that there is a genuine issue of material fact as to whether the vinyl siding was defective, even in the absence of expert testimony that the product was defective. In this matter, Triplex has pursued recovery in view of the manufacturer's express warranty which provided that the vinyl siding would be free from defects in material and workmanship in the course of manufacture if installed according to the manufacturer's specifications.
 {¶ 10} Although Triplex's express warranty claim is rooted in contract law, not tort law,[3] its claim is similar to a products liability claim, in that Triplex is seeking to demonstrate that the problems it has experienced with the vinyl siding are a result of a manufacturing defect. In order to prevail on a products liability claim, a plaintiff must demonstrate that: (1) there was a defect in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the defendant's control; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or losses. State Farm Fire Cas. Co. v. ChryslerCorp. (1988), 37 Ohio St.3d 1, 5-6.
 {¶ 11} "Product defects may be proven by direct or circumstantial evidence." Id. at 6. It is clear, however, that "[t]here must be some proof upon which the trier of fact can reasonably conclude that it is more likely than not that the allegedly defective condition caused the plaintiff's injuries. Proof of causation must be by a probability." Fogle v. CessnaAircraft Co. (Jan. 16, 1992), Franklin App. No. 90AP-977 (citations omitted). In other words, a jury must not be left to speculate. See Cincinnati Ins. Co. v. Dixon Industries, Miami App. No. 2003CA41, 2004-Ohio-4925 (finding that reasonable minds would be left to speculate as to whether a lawnmower had a defect, and whether that defect caused a house fire, when evidence suggesting another possible source of the fire, i.e., a toy jeep, greatly weakened the inference that the lawnmower had been defective).
 {¶ 12} In support of its motion for summary judgment, Alcoa submitted deposition testimony of Alan Hoying, a manufacturing engineer who serves as technical services manager for Alcoa. Mr. Hoying testified that he initially went to look at the buildings in September 1998, and that he subsequently visited the buildings in 2003. Mr. Hoying testified that, both times he went to inspect the buildings, he saw problems with the nailing as it related to the application of the vinyl siding. He testified that he saw instances where nails were placed into sheathing that would not hold nails. Those nails were not otherwise placed into a stud behind the sheathing in order to secure them. He testified that he saw bowed studs that could have resulted from lumber shrinkage or other factors, and that such a condition is not uncommon. Mr. Hoying further testified that the problems with the siding were a result of improper installation, and that he did not see problems where installation was proper.
 {¶ 13} The evidence presented in support of Alcoa's motion for summary judgment demonstrated that the product failure was a result of improper installation, thereby precluding recovery under the express warranty. Therefore, Alcoa discharged its initial burden of informing the trial court of the basis of its motion for summary judgment, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Thus, the issue becomes whether Triplex met its reciprocal burden to demonstrate specific facts to show that there is a genuine issue for trial.
 {¶ 14} Triplex argues that evidence contained in the record demonstrates a genuine issue of material fact as to whether the vinyl siding was defective. Triplex argues that, under Ohio law, a plaintiff can establish a defective product by circumstantial evidence without the need for expert testimony. In other words, Triplex argues that the absence of that expert testimony did not prevent it from demonstrating a genuine issue as to whether the problems it experienced with the vinyl siding were caused by a defect in the product. According to Alcoa, the availability of direct evidence, i.e., the fact that the product has not been destroyed or otherwise made unavailable, precluded the use of circumstantial evidence to demonstrate a product defect.
 {¶ 15} "Where direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." State Farm Fire Cas.Co., supra, at 6 (citations omitted). As this court has stated: "In some cases, there will be evidence directly linking the alleged product defect to the accident or injury. Alternatively, where there are several possible explanations, evidence tending to eliminate the other possibilities necessarily acts as proof of the remaining possibility." Fogle, supra, citing bothWestinghouse Electric Corp. v. Dolly Madison Corp. (1975), 42 Ohio St.2d 122, 127, and Gedra v. Dallmer (1950),153 Ohio St. 258, paragraph two of the syllabus.
 {¶ 16} Expert testimony as to the linear thermal expansion coefficient of the vinyl siding, combined with testimony as to whether that coefficient rendered the vinyl siding as impermissibly susceptible to buckling and detaching, would have provided direct evidence as to whether the product is defective. However, the absence of that testimony was not fatal to plaintiff's case, as a product defect could still be demonstrated by circumstantial evidence. See State Farm Fire Cas., supra, at 6. Unlike Alcoa, we do not interpret the statement in StateFarm Fire Cas. that "[w]here direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence," to preclude the use of circumstantial evidence to prove a defect if direct evidence is potentially available.
 {¶ 17} Furthermore, in Falls v. Cent. Mut. Ins. Co. (1995),107 Ohio App.3d 846, this court essentially determined that the existence of a product defect can be demonstrated by circumstantial evidence, without the need for expert testimony, even if direct evidence is potentially available. In Falls, the plaintiff brought a product liability action against a car manufacturer, Nissan, after her seat belt unfastened during a multi-car collision. Nissan moved for summary judgment, supporting its motion with expert testimony that the seat belt was not defective. Nissan's expert personally examined the seat belt and opined that it was not defective. In response, the plaintiff submitted her own deposition testimony "that she had properly fastened the seat belt and that the seat belt came unfastened during the collision." Id. at 847. This court determined that it could be reasonably inferred from the plaintiff's deposition testimony that the seat belt failed to perform its intended purpose of restraining passengers in an accident. Id. at 848-849. This court concluded that the plaintiff's deposition testimony created material issues of fact regarding causation and the existence of a defect, and, therefore, summary judgment in favor of defendant was inappropriate. Id. Thus, despite the availability of the allegedly defective product after the multi-car collision involving the plaintiff in that case, the plaintiff was not precluded from demonstrating a genuine issue of material fact through circumstantial evidence.
 {¶ 18} Alcoa argues that Falls is inapplicable to this case because it is distinguishable from this case in several ways. Alcoa asserts that there is evidence of other possible reasons for the damages in this case, but in Falls there was no discussion of other possibilities for why the seat belt failed. However, if other possibilities are reasonably excluded, then a product defect is a probability, and the reasoning of Falls is just as applicable.
 {¶ 19} Alcoa also contends that its expert conducted a more rigorous analysis of the product than the expert in the Falls
case. That argument is unpersuasive, as Alcoa's expert's examination of the vinyl siding was not exhaustive, as he did not conduct a scientific analysis to determine whether the vinyl siding was impermissibly susceptible to climactic changes. He simply examined the installation of the product and opined that the product was not properly installed. In fact, Mr. Hoying's testimony indicated that if the vinyl siding is not performing as expected under optimum installation conditions, the product is defective.
 {¶ 20} Lastly, Alcoa asserts that the plaintiff's testimony in Falls concerned the relatively simple issue of whether she had fastened her seat belt, but, in this case, the issue is more complex. According to Alcoa, it is significant that the Falls
case was a personal injury case, and this case is a "complex commercial case." (Alcoa's merit brief, at 20.) Certainly, at the molecular level, this case involves the thermal reactive properties of the vinyl siding. However, this case also involves the alleged failure of vinyl siding to remain affixed to buildings, despite an express warranty providing that the vinyl siding would be free from defects in material and workmanship in the course of manufacture. Whether that alleged failure was a result of installation issues or manufacturing deficiencies is the central disputed issue in this case.
 {¶ 21} Under the reasoning of State Farm Fire Cas.,
supra, in order for Triplex to demonstrate a product defect by circumstantial evidence, it must show that the problems it experienced with the vinyl siding were a result of a product defect, and not "other possibilities." It is clear that there are many conceivable reasons why vinyl siding could detach from a structure. For example, it is conceivable that vinyl siding could detach from a structure as a result of extreme straight-line winds or tornadic activity, or other similarly destructive forces. In fact, the express warranty at issue in this case specifically excluded from coverage damages resulting from those types of circumstances. However, the occurrence of those unusual circumstances is not suggested in this case. Moreover, for Triplex to meet its burden of proof, it was not necessary for it to rule out all possible reasons for the vinyl siding to have detached from the buildings. See id. at 6.
 {¶ 22} In the case at bar, the following circumstances, or factors, have been raised and/or argued as potential reasons for the vinyl siding problems: (1) the expansion and contraction characteristics of the vinyl siding, (2) installation related deficiencies, including how, and onto what, the vinyl siding was installed, and (3) non-extreme weather conditions. Regarding the weather, we find that it would be reasonable to expect vinyl siding not to detach from a building as a result of non-extreme weather conditions, including normal variations in weather conditions, in the absence of any other factor potentially affecting its performance.[4] Thus, in this case, if installation issues are eliminated as possible reasons for problems with the vinyl siding, then a reasonable person could conclude that the problems were, more likely than not, a result of a manufacturing defect.
 {¶ 23} The record reveals that Ball Enterprises, Inc., attempted to fix the vinyl siding problems at Triplex's property in the fall of 1998 and the summer of 1999. In support of its motion for summary judgment, Ball Enterprises, Inc. submitted the affidavit of Jeff Ball, one of its employees. Mr. Ball averred that he has been in the siding and contracting business since 1984, working primarily on hanging, replacing, and repairing siding on both residential and commercial properties. Alcoa notes that Mr. Ball testified at his deposition that the previous installer failed to adequately nail the vinyl siding to the buildings. Mr. Ball further opined at his deposition that the construction of the building contributed to the problems associated with the vinyl siding at Triplex's property, specifically citing the previous installer's attempt to affix the vinyl siding in areas with non-nailable sheathing. According to Mr. Ball's affidavit, his and his crew's work relating to the vinyl siding on the buildings exceeded the standard of care utilized by contractors rendering the same or similar services and was in accord with the specific instructions of Alcoa.[5]
 {¶ 24} The record also contains the deposition of Peter Klein, the operations manager for the properties at issue in this case. His responsibilities include overseeing the maintenance of the properties. Mr. Klein's deposition testimony chronicled the problems Triplex experienced with the vinyl siding and the numerous attempts that were made to permanently affix the vinyl siding to the buildings.
 {¶ 25} Regarding the north sides of the buildings, Mr. Klein testified that no problems were discovered in those areas. According to Alcoa, that testimony is detrimental to Triplex's case, as it demonstrates that there are possibilities as to why properly installed siding detaches, other than because of a product defect. Contrary to Alcoa's argument, that testimony is arguably consistent with Triplex's general contention that the vinyl siding's defect relates to its impermissible susceptibility to structural changes as a result of normal weather conditions. Specifically, it arguably supports the proposition that normal exposure of the vinyl siding to the sun contributes to the manifestation of the defective characteristics of the vinyl siding.
 {¶ 26} In addition, and most significantly, the testimony of Mr. Klein indicated that the vinyl siding failed to properly perform in areas in which Mr. Ball and his crew had worked. Coupling Mr. Klein's testimony with the evidence that Mr. Ball and his crew properly affixed the vinyl siding to the buildings, one could reasonably find that problems with the vinyl siding continued despite proper installation. Therefore, a trier of fact could reasonably conclude, based on the evidence in the record, that it is more likely than not that the problems Triplex experienced with the vinyl siding, at least in the areas in which Mr. Ball and his crew worked, were caused by a manufacturing defect.
 {¶ 27} In view of the evidence before the trial court, and construing it most favorably for the non-moving party, there exists a genuine issue of material fact as to whether problems with the vinyl siding, at least in the areas in which Mr. Ball and his crew worked, were caused by a manufacturing defect, even in the absence of expert testimony that the product was defective. Because we find that a genuine issue exists for trial, we conclude that the trial court erred in granting Alcoa's motion for summary judgment. Accordingly, we sustain Triplex's first assignment of error.
 {¶ 28} By its second assignment of error, Triplex argues that the trial court erred in granting Alcoa's motion for summary judgment by finding Triplex's proposed expert, Mr. Dunham, not qualified to offer an opinion that the vinyl siding was defective when it was delivered for installation. However, in resolving Triplex's first assignment of error, we have determined that the trial court erred in granting summary judgment in favor of Alcoa, even in the absence of expert testimony that the product was defective. Consequently, it is unnecessary to determine whether the trial court erred in granting summary judgment on the basis alleged in Triplex's second assignment of error. Therefore, our disposition of Triplex's first assignment of error renders its second assignment of error moot.
 {¶ 29} For the foregoing reasons, we sustain Triplex's first assignment of error, and find its second assignment of error to be moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
Sadler and French, JJ., concur.
[1] Deposition testimony indicated that Mastic Corporation was acquired by Alcoa in 1989.
[2] The warranty excluded from coverage damage resulting from any one of many possible circumstances or conditions that could reasonably affect the performance of the vinyl siding but are beyond the reasonable control of the manufacturer, including, for example, faulty or improper installation, structural shrinkage or distortion of the property structure, and windstorms.
[3] See Luft v. Perry Cty. Lumber Supply Co., Franklin App. No. 02AP-559, 2003-Ohio-2305, at ¶ 47, citing Allied Paper, Inc.v. H.M. Holdings, Inc. (1993), 86 Ohio App.3d 8, 18.
[4] We observe that damages resulting from "normal weathering" were excluded from coverage under the express warranty. However, that exclusion was essentially limited to aesthetic damage, such as fading or chalking, to the colored surface of the vinyl siding. That type of damage is not at issue in this case.
[5] Mr. Ball's affidavit also indicated that the construction of the buildings, including the type of substrate used, was considered when it was determined how Mr. Ball and his crew would perform their repair work.