**HICKEY, Appellant,**

v.

**OTIS ELEVATOR COMPANY, Appellee.**

[Cite as *Hickey v. Otis Elevator Co.,* 163 Ohio App.3d 765, 2005-Ohio-4279.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–826.

Decided Aug. 18, 2005.

Taft, Stettinius & Hollister, L.L.P., Michael A. Byers, and Benjamin J. Parsons, for appellant.

Tucker, Ellis & West, L.L.P., Henry E. Billingsley II, and Thomas W. Baker, for appellee.

SADLER, Judge.

{¶ 1} Plaintiff-appellant, Christopher J. Hickey, appeals from the July 19, 2004 judgment of the Franklin County Court of Common Pleas, in which that court granted summary judgment in favor of defendant-appellee, Otis Elevator Company, and against appellant as to all of his claims. For the reasons that follow, we affirm.

{¶ 2} The following relevant facts of record are not in dispute. On September 19, 2000, appellant was injured by an electrical shock when he pressed a button on an elevator at Mount Carmel East Hospital ("Mount Carmel") in Columbus, Ohio. The elevator had been manufactured, installed, and serviced by appellee. On the date of his injury, and as part of his duties as an anesthesiology technician, appellant was transporting a patient when he reached out to press the elevator call button. As he pressed the call button, he received a sudden

electrical shock, and a loud "crack" sounded down the hall. Appellant was knocked back several feet, and his body began to shake uncontrollably. He lapsed into a mentally confused state and experienced intense pain from his left hand to his left shoulder. Appellant was escorted to the emergency room for treatment, where he was diagnosed with an electrical injury to his left hand and arm.

{¶ 3} About ten to 15 minutes after the incident, two hospital maintenance workers, Dwight Harlor III and Jose M. Alvarez, arrived at the elevator bank. Harlor testified, by way of deposition, that without disassembling the buttons or removing the metal plate surrounding the buttons, he used a voltage meter to test the metal plate surrounding the elevator buttons, and he found nothing out of the ordinary. Alvarez testified that Harlor did remove the metal plates to examine the underlying wiring, and he and Harlor removed the buttons and touched the wiring underneath to determine whether there were any bare wires or anything else that would deliver a shock. They found nothing.

{¶ 4} The following morning, a Mount Carmel electrician examined the push-button panel that appellant had touched and found no damage and nothing out of the ordinary. Also on the morning after the incident, one of appellee's mechanics examined the elevators and the touch buttons and found no problems of any sort.

{¶ 5} Appellee installed the elevator and its push-button panel in 1972. The elevator is the property of the building owner, Mount Carmel. Mount Carmel entered into an elevator maintenance agreement with appellee pursuant to which appellee serviced and maintained the elevators it had installed. During the 12 months immediately preceding appellant's injury, appellee's mechanics performed regularly scheduled maintenance examinations of all of the elevators. None of the inspections revealed any problems with the elevator call buttons.

{¶ 6} Appellant commenced this action against appellee on September 15, 2002. His complaint set forth claims for negligent design, manufacture, installation, maintenance and inspection (Count I), strict products liability (Count II), failure to warn (Count III), and breach of express and implied warranties (Count IV). Appellant also sought punitive damages (Count V).

{¶ 7} On May 21, 2004, appellee filed a motion for summary judgment, contending that there existed no genuine issues of material fact as to the essential elements of all of appellant's claims. The trial court granted the motion and dismissed the entire complaint. This appeal followed, wherein appellant advances the following single assignment of error:

> The trial court erred to the prejudice of plaintiff-appellant Christopher J. Hickey when it granted the motion for summary judgment of defendant-appellee Otis Elevator Company.

{¶ 8} In support of his single assignment of error, appellant argues that genuine issues of material fact exist such that it was error for the trial court to grant summary judgment as to his claim for strict liability for defects in the design of the elevator and as to his claim of negligence in the design, manufacture, installation, maintenance, and inspection of the elevator.

{¶ 9} We review the trial court's grant of summary judgment de novo. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. We construe the facts gleaned from the record in a light most favorable to appellant, as is appropriate on review of a summary judgment. We review questions of law de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.

{¶ 10} Appellant sought to prevail on his strict products liability claim under the "consumer expectation test." Under the consumer-expectation test, a product is defective in design or formulation when it is "more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Former R.C. 2307.75(A)(2).[1] Here, there is no question that appellant demonstrated unsafe, unexpected product performance because he received a severe electric shock by simply pushing the elevator call button. This is sufficient for a trier of fact to infer the existence of a product defect. However, satisfaction of the consumer expectation test is not all a plaintiff must prove in a strict liability action concerning a design defect.

{¶ 11} The Supreme Court of Ohio has held that where a product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, strict liability for a design defect is not proven absent proof of causation relating the plaintiff's injury to some aspect of the challenged design. *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489, at paragraph four of the syllabus. The court in *State Farm* held that in order to prevail in a strict products-liability action, the plaintiff must prove, by direct or circumstantial evidence, that there was a defect

---

1. The consumer expectation test has subsequently been repealed. See Am.Sub.S.B. 80, effective Apr. 7, 2005.

in the product manufactured by the defendant, that the defect existed at the time the product left the hands of the defendant, and that the defect was the direct and proximate cause of the plaintiff's injuries. Id. at 11, 523 N.E.2d 489. Satisfaction of the consumer-expectation test gives rise to an inference of the existence of a defect. Id. at 7, 523 N.E.2d 489.

{¶ 12} In addition, however, "[t]here must be some proof upon which the trier of fact can reasonably conclude that it is more likely than not that the allegedly defective condition caused the plaintiff's injuries. Proof of causation must be by a probability. The jury will not be permitted to speculate when defendant's conduct is merely one of several possible causes of plaintiff's injuries." *Fogle v. Cessna Aircraft Co.* (Jan. 16, 1992), 10th Dist. No. 90AP–977, 1992 WL 10272. (Citations omitted.)

{¶ 13} In *State Farm*, 37 Ohio St.3d 1, 523 N.E.2d 489, an automobile manufactured by Chrysler Corporation and owned by the plaintiff's insureds experienced a series of electrical problems culminating in the vehicle's catching fire in the insureds' garage while it was parked, unattended, and turned off. Expert testimony established that the cause of the fire was electrical, but an exact cause could not be positively identified due to the total destruction of the wiring and electrical components. The Supreme Court of Ohio concluded that the trial court had properly granted a directed verdict for Chrysler because the evidence failed to causally link a specific defect to the fire. The court looked at the history of repairs to the vehicle and determined that "a leap of logic is required to infer the existence of an inherent electrical defect from the automobile's repair history." Id. at 9, 523 N.E.2d 489.

{¶ 14} In the present case, there was no evidence of a causal link between the alleged product defect and appellant's injuries. Appellant contends that his case is similar to *Caserta v. Holland Ladder & Mfg. Co.* (June 30, 2000), 10th Dist. No. 99AP–338, 2000 WL 868570. In *Caserta*, the plaintiff was injured when a ladder collapsed while he was using it to repair his roof. The plaintiff presented evidence that he had purchased the ladder at the end of 1991 and that he was injured in April 1992. The plaintiff also testified that he did not abuse the ladder at any time prior to the date it collapsed. The trial court granted a directed verdict against the plaintiff on the basis that the jury would be left to speculate whether the product contained a defect and whether such a defect existed at the time the product left the manufacturer's control.

{¶ 15} This court reversed, holding that, construing the evidence in a light most favorable to the plaintiff, he had presented sufficient evidence to create a genuine issue of fact as to whether a design defect was present in the ladder at the time it left the control of the manufacturer. We determined that the plaintiff's testimony in *Caserta* was sufficient to present a triable issue as to

causation, in part because the plaintiff eliminated other causes for the collapse by stating that he had not abused the product, that it had been used only for normal household work from the time of purchase, that the ladder had been placed on firm ground, and that it was stable while in use.

{¶ 16} We find the instant case to be more akin to *State Farm* than to *Caserta*. The court in *State Farm* was concerned with whether an electrical defect was present when the vehicle left the hands of the manufacturer and whether that alleged defect caused the injuries that the plaintiff's insureds experienced. So much had happened to the vehicle from the time it left the control of the manufacturer that it would have been speculative for a jury to simply infer that a design defect caused the plaintiffs' injuries. Similarly, in this case, the elevator in question was manufactured and installed nearly 30 years prior to the accident, not just several months prior to the accident, as was the case in *Caserta*.

{¶ 17} Additionally, an elevator, like an automobile, is a complicated mechanical device. In *Porter v. Gibson Greetings, Inc.* (Dec. 12, 1997), 2nd Dist. No. 16575, 1997 WL 761851, the plaintiff's eye was injured when an ordinary balloon she was inflating broke unexpectedly. In reversing the trial court's grant of summary judgment to the balloon's manufacturer, the court of appeals explained that a balloon is a much simpler device than an automobile; thus, the possible causes of a balloon malfunction are less numerous than the possible causes of an automobile malfunction. The realm for jury speculation is, therefore, much wider with respect to the causal link between an automobile malfunction and a plaintiff's injury than with respect to the causal link between a balloon malfunction and a plaintiff's injury. As with an automobile, the possible causes for injuries sustained in or on an elevator are far too numerous to send the issue to a trier of fact absent evidence that would support a nonspeculative jury finding that the challenged design defect caused the injuries.

{¶ 18} Lastly, we note that the elevator at issue in the instant case has been located in a busy metropolitan hospital for nearly 30 years; to say that the mere fact that appellant was shocked in the year 2000 is evidence of a design defect that was present in 1972 requires a leap of logic that the analysis and precedent provided by *State Farm* do not permit.

{¶ 19} Proof of causation is an essential element of any products liability action. Appellant presented no evidence that his injury was caused by a design defect in the elevator call button or the wiring and components that made up the call panel. As appellant himself noted in his brief, "electricity can be both unpredictable and difficult to explain." Thus, a jury would be left to speculate whether a design defect caused appellant's injury.

{¶ 20} Appellee met its summary judgment burden by presenting evidence that its technicians inspected the elevator call buttons and found no damage and no problems such as defective wiring or shorts. Appellant, on the other hand,

submitted no expert or other evidence, direct or circumstantial, upon which a trier of fact could conclude that a manufacturing defect caused his injuries. Appellant having failed to meet his burden under Civ.R. 56 to demonstrate the existence of a genuine issue of material fact as to the element of causation, the trial court did not err when it granted summary judgment in favor of appellee on his strict products liability claim.

{¶ 21} Appellant also argues that the trial court incorrectly dismissed his negligence claim for lack of triable issues of fact. Appellant's negligence claim is predicated upon appellee's maintenance of the elevator and call buttons, pursuant to its contract with Mount Carmel. Appellant contends that under the doctrine of res ipsa loquitur, a jury could infer negligence, and, therefore, summary judgment is precluded.

{¶ 22} Appellee responds that its duty of care is limited by the terms of its service agreement with Mount Carmel. Under the terms of that agreement, appellee did not retain exclusive control over the elevators, and therefore, appellee argues, the doctrine of res ipsa loquitur is inapplicable. Appellee also argues that appellant produced no evidence that would create a genuine issue of fact regarding whether it performed its contractual duties in a negligent manner, or that any such negligence was the proximate cause of appellant's injuries.

{¶ 23} We begin with the doctrine of res ipsa loquitur, which, literally translated from the Latin means, "the thing speaks for itself." Black's Law Dictionary (8th Ed.2004) 1336. The phrase embodies the rule that " 'the circumstances attendant on the accident are of such a nature as to justify a jury, in light of common sense and past experience, in inferring that the accident was probably the result of the defendant's negligence, in the absence of explanation or other evidence which the jury believes.' " Id., quoting Speiser, *The Negligence Case: Res Ipsa Loquitur* (1972) Section 1:2, at 5–6.

{¶ 24} Put another way, the doctrine permits an inference of negligence on the part of the defendant to be drawn from the factual circumstances surrounding the injury to the plaintiff. *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66, 52 O.O.2d 366, 262 N.E.2d 703. "To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Id. at 66–67, 52 O.O.2d 366, 262 N.E.2d 703.

{¶ 25} Res ipsa loquitur does not apply, however, " 'where the facts are such that an inference that the accident was due to a cause other than defen-

dant's negligence could be drawn as reasonably as that it was due to his negligence.'" *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 172, 17 O.O.3d 102, 406 N.E.2d 1385, quoting *Loomis v. Toledo Rys. & Light Co.* (1923), 107 Ohio St. 161, 169–170, 1 Ohio Law Abs. 261, 140 N.E. 639.

{¶ 26} The doctrine of res ipsa loquitur is not applicable in a negligence action against an elevator maintenance company where the evidence discloses that the defendant did not have exclusive possession, control, and management of the elevator. *Kish v. Dover Elevator Co.* (June 18, 1990), 7th Dist. No. 89 C.A. 152, 1990 WL 83483; *Parise v. Otis Elevator Co.* (1954), 100 Ohio App. 200, 60 O.O. 171, 136 N.E.2d 113, at paragraph one of the syllabus; *Norman v. Thomas Emery's Sons, Inc.* (1966), 7 Ohio App.2d 41, 36 O.O.2d 95, 218 N.E.2d 480. See, also, *Koktavy v. United Fireworks Mfg. Co., Inc.* (1954), 160 Ohio St. 461, 52 O.O. 351, 117 N.E.2d 16, at paragraph one of the syllabus ("Ordinarily the rule of *res ipsa loquitur* is not applicable against a party because of an instrumentality causing injury and damage to another unless such party had exclusive possession, control and management of the instrumentality at the time it caused the injury").

{¶ 27} In this case there is no evidence that appellee maintained exclusive control over the elevators in Mount Carmel. In fact, the maintenance agreement between appellee and Mount Carmel specifies that while appellee was responsible for maintaining the units, possession and control of the elevators remained in the hands of Mount Carmel at all times. Thus, any injurious condition of the elevator could have been caused by any one of the numerous negligent acts or intentional misuses that could have occurred while appellee was not on site with the elevator in question. The doctrine of res ipsa loquitur does not supply proof that the instrumentality caused the plaintiff's injuries; rather, such proof of causation is a prerequisite to application of the doctrine in the first instance. *Selective Ins. Co. v. Columbus & S. Ohio Elec. Co.* (Sept. 24, 1974), 10th Dist. No. 74AP–195, 1974 WL 184331. Because the elevator was not in the exclusive control of appellee, the doctrine of res ipsa loquitur does not apply to permit an inference of negligence on appellee's part and to thereby preclude summary judgment.

{¶ 28} We now turn to appellant's claim that the evidence demonstrates a genuine issue of material fact as to whether appellee was negligent in performing its maintenance duties under its contract with Mount Carmel. In order to sustain an action in negligence, a party must establish the three essential elements: duty, breach of the duty, and an injury proximately caused by the breach. *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707.

{¶ 29} The Supreme Court of Ohio has espoused the notion that liability will attach to one who negligently performs under a maintenance contract when such negligence is the proximate cause of injury to a third party. In *Durham v.*

*Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10, the court applied the theory as follows:

> Where one, under a written contract, undertakes to service and examine the mechanical equipment of another and make a report on the condition thereof, and the equipment is of such a nature as to make it reasonably certain that life and limb will be endangered if such work is negligently performed, he is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and if such duty is negligently or carelessly performed whereby injury occurs to a blameless person, not a party to the contract and lawfully using such equipment, such injured person has a right of action directly against the offending contractor. Liability in such instance is not based upon any contractual relation between the person injured and the offending contractor, but upon the failure of such contractor to exercise due care in the performance of his assumed obligations.

Id. at paragraph two of the syllabus.

{¶ 30} Under this theory of negligence, the scope of appellee's duty to appellant is, as a matter of law, limited by the maintenance agreement between it and Mount Carmel. *Heneghan v. Sears, Roebuck & Co.* (1990), 67 Ohio App.3d 490, 494, 587 N.E.2d 854, citing *Durham,* 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10; *Crawford v. Millar Elevator Serv. Co.* (May 11, 2000), 8th Dist. No. 77277, 2000 WL 573177; *Schillo v. G. Serv., Inc.* (July 31, 1997), 8th Dist. No. 71813, 1997 WL 428616.

{¶ 31} In support of its motion for summary judgment, appellee presented the affidavit of appellee's maintenance supervisor, Troy Rawlins. Rawlins averred that appellee's qualified mechanics performed regularly scheduled maintenance on the elevator in question, in accordance with appellee's contractual obligations, and found no problems with the buttons. He also stated that appellee's mechanics were never given notice of any problems with the elevator buttons. Appellant offered no evidence of negligence that rebuts Rawlins's statements in his affidavit that appellee was not negligent in performing its contract with Mount Carmel.

{¶ 32} Given the inapplicability of the doctrine of res ipsa loquitur and the absence of evidence to demonstrate appellee's negligence, the trial court did not err in granting summary judgment for appellee on appellant's negligence claim.

{¶ 33} For all of the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BRYANT and DESHLER, JJ., concur.

DESHLER, J., retired, of the Tenth Appellate District, sitting by assignment.