[Cite as *Wittensoldner v. Ohio Dept. of Transp.*, 2013-Ohio-4863.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ROBERT WITTENSOLDNER, et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant

Case No. 2011-05823

Judge Patrick M. McGrath
Magistrate Robert Van Schoyck

## ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

{¶ 1} On March 18, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On April 12, 2013, plaintiffs filed a memorandum in opposition. The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Plaintiff, Robert Wittensoldner (hereinafter "plaintiff"), brings this action for negligence. On October 7, 2010, Darrell Brosius, an employee of defendant, was at the intersection of U.S. Route 62 and State Route 165 in Mahoning County performing work in preparation for the scheduled replacement later that day of the "signal span wire," being the steel cable from which all the overhead traffic lights for the intersection were hung. While Brosius performed this work, plaintiff, a township police officer, directed traffic at the intersection. There is no dispute that the signal span wire and attached traffic lights suddenly fell and that one of the traffic lights glanced off a moving vehicle and struck plaintiff in the head, causing him to sustain injury.

{¶ 5} "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). "Pursuant to R.C. 5501.11, [defendant] has the responsibility to construct and maintain highways in a safe and reasonable manner. However, the state is not an insurer of the safety of its highways." *Rhodus v. Ohio Dept. of Transp.*, 67 Ohio App.3d 723, 729-730 (10th Dist.1990).

{¶ 6} In support of its motion for summary judgment, defendant submitted an affidavit from Brosius, as well as plaintiffs' responses to interrogatories. Plaintiffs submitted transcripts of depositions of Brosius and another employee of defendant, Martin Baker.

{¶ 7} Baker, who is employed as a "signal electrician 1," testified in his deposition that on or about the afternoon of September 3, 2010, he received a dispatch stating that defendant had been informed that the traffic lights were hanging low at the intersection of U.S. Route 62 and State Route 165. Baker stated that he and another employee of defendant drove to the intersection in a bucket truck to assess the problem. Baker

testified that he determined that a power line belonging to a utility company had been in contact with the signal span wire and burnt it such that it came apart, meaning that the traffic lights were suspended only by the electric service line that supplied them with power, which was wrapped around the signal span wire; he explained that the electric service line is not designed to bear the weight of the traffic lights. Baker stated that his repair entailed using a "come along," or hand-cranked winch, to pull the two sections of broken signal span wire back together, and then splicing a three or four foot piece of new wire on either side of where the burn occurred, attaching the new wire to the old with a "three-bolt clamp" on each side.

{¶ 8} Brosius, who is employed as a "signal electrician 2," testified in his deposition that Baker's repair was considered to be a temporary solution, and that he was part of a crew that was scheduled to replace the entire signal span wire at the intersection on the night of October 7, 2010. Brosius explained that he came to the intersection that afternoon to inspect the site and perform some preparatory work on his own, and he related that when he arrived, Baker's repair appeared to have held up and the traffic lights were hanging at the proper height. Brosius testified that electric service lines are normally wrapped around the signal span wire, and that in order to enable the replacement of the signal span wire later that night, he got in the bucket of his truck and unwrapped the electric service line. Brosius stated that a few minutes later, as he was preparing to leave, the traffic lights suddenly dropped about ten feet lower. According to Brosius, one of the three-bolt clamps that Baker used in his splice repair had come off such that the weight of the traffic lights was born only by the electric service line.

{¶ 9} Brosius testified that he then secured two "cable grip" tools to the original signal span wire (not the smaller piece of wire Baker had used as a splice), one on each side of the burnt area. He then used a hand-cranked winch attached to the cable grips to pull the two sides together again. Brosius stated that after he came down from the bucket of the truck and measured the traffic lights to be 14 feet above the ground, plaintiff, who had recently arrived at the scene, began to direct traffic. Brosius stated

that he got back in the bucket intending to pull the signal span wire tighter in order to raise the traffic lights to the standard 16-foot height. According to Brosius, however, he heard the sound of the traffic lights falling, looked over, and saw that plaintiff was injured.

{¶ 10} Brosius testified that he proceeded to check on plaintiff, pull all the traffic lights out of the intersection, erect temporary stop signs, and call for assistance from co-workers. Brosius explained that he was not able to determine at that time what had caused the accident, but that while performing work on another intersection a week or two later, he observed one of the two cable grips malfunction such that it slipped from the wire to which he had it fastened. Brosius, who explained that these were the same two cable grips that were in use when plaintiff was injured, testified that the next morning, he tested the tools by attempting to pull together two pieces of wire that he had attached to trucks parked outside his department's shop. According to Brosius, the cable grip that had malfunctioned the day before slipped once again, while the other held firm to the wire as it should. Brosius stated that as a result of these observations, he then inferred that the accident in which plaintiff was injured was due to a malfunction of the cable grip, resulting in the wire slipping free from the tool. Brosius testified that he notified his supervisor of the tool's malfunctioning, and that it was then taken out of service; the tool, which bears the name of Klein Tools, Incorporated, was produced at his deposition. Brosius further testified that he had regularly used the tool with no prior problems, that in more than 15 years at his job he has not otherwise had a cable grip fail to hold a wire firmly in place, and that he had no prior knowledge of any problems with these tools. The affidavit of Brosius that defendant submitted provides testimony similar to the foregoing.

{¶ 11} Defendant thus argues that plaintiff's injuries were caused by the failure of the cable grip tool, through no fault of defendant, and that defendant did not have actual or constructive notice that the tool would fail.

{¶ 12} Plaintiffs argue that the doctrine of res ipsa loquitur is applicable and that "the negligence of [defendant] is therefore inferred as a matter of law." The doctrine of res ipsa loquitur "permits an inference of negligence on the part of the defendant to be drawn from the factual circumstances surrounding the injury to the plaintiff. * * * 'To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.'" *Hickey v. Otis Elevator Co.*, 163 Ohio App.3d 765, 2005-Ohio-4279, ¶ 24 (10th Dist.), quoting *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67 (1970). The doctrine, however, "'does not apply where there is direct evidence as to the cause, or where the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence.'" *Jennings Buick, Inc. v. Cincinnati*, 63 Ohio St.2d 167, 172 (1980), quoting *Loomis v. Toledo Rys. & Light Co.*, 107 Ohio St. 161, 169-170 (1923).

{¶ 13} The only evidence tending to establish the cause of the accident in this case with any certainty is the testimony of Brosius. He stated that although Baker's repair failed after the electric service line was unwrapped, no one was harmed at that time and he was able to reconnect and raise the signal span wire using the cable grips and winch, standard tools of the trade, but that the malfunctioning of one of the cable grips resulted in the wire slipping free and falling downward with the attached traffic lights. While plaintiff contends that Brosius' testimony as to the accident being caused by a malfunctioning tool is inadmissible, the court concludes that it is admissible opinion testimony by a lay witness inasmuch as it is rationally based on his personal observations and perceptions and is helpful to a clear understanding of a fact in issue. *See* Evid.R. 701. Brosius' undisputed testimony constitutes evidence tending to show

that the cause of the accident was something other than negligence on the part of defendant; that is, if the accident was the result of a manufacturing or design defect in the tool, then plaintiff's injury would have occurred even if defendant had satisfied its duty of care. As such, the doctrine of res ipsa loquitur does not apply.

{¶ 14} Furthermore, whereas defendant has presented evidence tending to show that the accident resulted from a cause other than its negligence, plaintiff has not presented evidence of acts or omissions on the part of defendant from which a reasonable trier of fact could conclude that defendant caused the accident. With respect to the tool identified by Brosius as having malfunctioned, there is no evidence that the tool had ever failed before, that any defect in the tool was previously manifest, that the tool was unsuited for this type of work, that the tool could not have failed without some form of negligence on the part of defendant, or, how defendant could have prevented or predicted that the tool would malfunction. In short, plaintiff has not provided proof of facts to show that a genuine issue exists for trial. Accordingly, reasonable minds can only conclude that defendant is entitled to judgment as a matter of law on plaintiff's claim of negligence.

{¶ 15} Given that plaintiff cannot prevail on his claim of negligence, the derivative claim for loss of consortium asserted by plaintiff, Tara Wittensoldner, must also fail. *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992).

{¶ 16} For the foregoing reasons, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All other pending motions are DENIED as moot. All previously scheduled events are VACATED. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Martin F. White
156 Park Avenue, N.E.
P.O. Box 1150
Warren, Ohio 44482-1150

Stephanie D. Pestello-Sharf
Velda K. Hofacker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

001
Filed May 28, 2013
To S.C. Reporter October 31, 2013