[Cite as *Simmons v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-5226.]

| | |
|---|---|
| ERIC SIMMONS | Case No. 2014-00860 |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, brought this action for negligence alleging that a lighting fixture detached from the ceiling of his housing unit and fell on him causing injury. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} At trial, plaintiff testified that he arrived at the Pickaway Correctional Institution (PCI) on March 18, 2014, where he was assigned to housing unit C2 231. Plaintiff described housing unit C2 as an old building but did not know the age of the structure. Plaintiff testified that in housing unit C2 he has observed water leaking from the roof, plaster peeling from the ceiling, and noise emanating from the various pipes. Plaintiff related that there are two other housing units just like housing unit C2. Plaintiff reported that inmates are housed in one of the two other units whereas he believed the other unit, which is vacant, is condemned and will be demolished in the future. Housing unit C2 is comprised of five bays. Plaintiff stated that Bay 2 consists of 10 bunk beds on each side of a long aisle. Plaintiff was assigned to Bay 2, bunk 31, which is the low bunk.

{¶3} Plaintiff testified that on June 22, 2014, he was lying in his bunk when a lighting fixture fell from the ceiling, struck his shoulder and landed on his bunk. Plaintiff explained that the lighting fixture was attached to a metal conduit pipe that extended

along the ceiling.  Plaintiff believed that the entire lighting unit detached from the ceiling and swung 20 feet downward, striking him while he was on his bunk.  After the lighting fixture fell, a neighboring inmate picked the lighting fixture up off of plaintiff's bunk and set it against a wall.  Photos of plaintiff's bunk and the lighting fixture leaning against the wall between two bunks were admitted as Plaintiff's Exhibits 1-2.  Plaintiff's Exhibit 3 is a photograph of the ceiling where the lighting fixture was previously attached. Corrections officers subsequently arrived whereupon plaintiff informed them that he was struck by the lighting fixture.  Plaintiff was escorted to medical and later to the Captain's Office where he completed two statements regarding the incident.  Plaintiff's Exhibit 4; Defendant's Exhibit A.

{¶4} Plaintiff testified that during the 60-day period of time in which he was assigned to housing unit C2 prior to the lighting fixture falling, he never witnessed any corrections officer or maintenance staff member conduct an inspection of the structure or lighting fixtures.  Plaintiff added that prior to June 22, 2014, he did not notice if the lighting fixture was loose, and he did not have any warning that the lighting fixture would fall.  Finally, plaintiff testified that prior to June 22, 2014, he was aware of other incidents in the housing unit where the plastic covers on several lighting fixtures fell to the ground, but plaintiff did not know whether anyone reported the incidents.  Plaintiff denied ever seeing inmates hide items in the lighting fixtures.

{¶5} Inmate Eric McIntosh testified that he arrived at PCI on June 10, 2014 and was assigned to housing unit C2, 233, which was adjacent to plaintiff's bunk assignment.  McIntosh described housing unit C2 as old although he did not know when it was constructed.  McIntosh added that C2 was old when he was previously incarcerated at PCI in 1987.  McIntosh believed that PCI operated as a prerelease center for inmates in the 1980s and before that operated as a mental health facility.

{¶6} McIntosh testified that on June 10, 2014, he was lying at the foot of his bunk watching plaintiff's television while it appeared that plaintiff was sleeping on his bunk.

McIntosh testified that the entire lighting fixture fell from the ceiling and landed on plaintiff's bunk, which caused plaintiff to exclaim "damn!" McIntosh lifted the lighting fixture off of plaintiff's bunk and placed it against the wall between the two bunks. McIntosh asserted that the lighting fixture, which he described as very heavy, was 30 inches long and half a foot wide. McIntosh testified that thereafter he asked whether plaintiff was injured to which plaintiff replied that he thought the lighting fixture had hit him. According to McIntosh, prior to the lighting fixture falling, he never noticed anyone perform an inspection of the lighting fixtures and never noticed any inmates meddling with the lighting fixtures. McIntosh reported that he was unaware of any lighting fixtures in C2 falling prior to June 10, 2014.

{¶7} Corrections officer Dwayne Stephenson testified that he was working in housing unit C2 on June 22, 2014, supervising 214 inmates in the various bays; 40 inmates reside in Bay 2. Stephenson stated that he worked the nightshift in C2 for about 5 years prior to the incident on June 14, 2014, and that part of his duties as a corrections officer include performing rounds in C2 looking for any security issues, checking on inmates, and looking for damage to the bathroom drains, lighting fixtures, bed frames and the structure itself. Stephenson reported that a typical round usually lasts for 10 minutes and that if he discovered anything that required the attention of maintenance staff, he would complete a work order. Stephenson asserted that Bay 2 has a history of issues with inmates hanging homemade antennas to the lighting fixtures in order to obtain better television signals, although he acknowledged that prior to June 22, 2014, he did not see any inmates meddling with the lighting fixture that struck plaintiff.

{¶8} Stephenson recalled hearing the noise of the lighting fixture falling from the ceiling on June 14, 2014. Stephenson testified that he proceeded to the area and concluded that it looked like the lighting fixture had swung down from the ceiling and collided with the wall by the end of plaintiff's bunk. Stephenson reported that plaintiff

was lying on his bunk when he arrived.  According to Stephenson, it was only after he asked plaintiff if he was okay that he learned that the lighting fixture brushed plaintiff's shoulder.  Stephenson asserted that he did not know of any other lighting fixture falling from the ceiling in C2 during the five-year period in which he worked in C2.  Following the incident, Stephenson completed an incident report and a work order.  Stephenson's incident report was admitted as Defendant's Exhibit B.

{¶9} Robert McLaughlin, who now works at the Southeastern Correctional Complex, testified that on June 22, 2014, he was employed at PCI as a maintenance repair worker 3.  McLaughlin stated that he is familiar with housing unit C2, which he described as an open dorm with long hallways that connect to the various bays.  McLaughlin asserted that he unofficially inspected the structure of buildings at PCI every time he was in the area, although he acknowledged that he did not perform formal inspections or maintain an inspection log.  McLaughlin added that any maintenance work performed would be performed pursuant to a work order.  McLaughlin testified that when he arrived at PCI the morning after the lighting fixture fell from the ceiling, he received a work order to fix the lighting fixture.  Plaintiff's Exhibit 8. McLaughlin reported that when he arrived in Bay 2, the lighting fixture was already capped off against the wall.  McLaughlin stated that the lighting fixture was not original to the building but he did not know the age of the lighting fixture or when it was installed.  McLaughlin testified that he was not aware of damage to any lighting fixtures or visible water damage in Bay 2 prior to the lighting fixture falling from the ceiling on June 22, 2014.  Finally, regarding a work order in Bay 3 where it was noted by another maintenance worker that lights and heaters were taken down in a shakedown, McLaughlin testified that the plastic cover of the lighting fixture would be removed during the shakedown, not the fixture.  Plaintiff's Exhibit 7.

{¶10} Finally, Joshua Caudill testified that he was the first relief officer at PCI on June 22, 2014, but he was not aware of the lighting fixture falling from the ceiling at that

time. Caudill added that he was aware that housing unit C2 is an older structure and that PCI formerly operated as a mental health facility, although he did not know when it was converted into a prison. Caudill related that C2 houses approximately 220 inmates who are assigned to bunk beds in the various bays. Caudill denied any knowledge of lighting fixtures becoming detached from the ceiling prior to June 22, 2014.

{¶11} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10. "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "The state's duty of reasonable care does not render it an insurer of inmate safety." *Allen v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-619, 2015-Ohio-383, ¶ 17. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16. "However, 'once [the state] becomes aware of a dangerous condition[,] it must take reasonable care to prevent injury to the inmate.'" *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 8, citing *Briscoe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 02AP-1109, 2003-Ohio-3533, ¶ 20.

{¶12} The distinction between actual and constructive notice is in the manner in which notice is obtained rather than in the amount of information obtained. *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶

14. Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. *Id.* "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Id.*, citing *In re Estate of Fahle*, 90 Ohio App. 195, 197 (6th Dist.1950); *McClellan v. Ohio Dept. of Transp.*, 34 Ohio App.3d 247, 250 (10th Dist.1986).

{¶13} Upon review of the evidence presented at trial, the magistrate finds as follows. On June 22, 2014, plaintiff was lying in his assigned low bunk watching television in housing unit C2, Bay 2, Bunk 31 when the entire lighting fixture detached from the ceiling above, fell, struck plaintiff on the shoulder, and landed on his bunk. McIntosh lifted the lighting fixture, which was still attached to a metal conduit pipe, off of plaintiff's bunk and rested it upright against the wall at the end of the bunk. Neither plaintiff nor McIntosh had any warning that the lighting fixture would fall from the ceiling. Corrections officer Stephenson subsequently arrived and learned that the lighting fixture fell from the ceiling and struck plaintiff's shoulder. Plaintiff was escorted to medical for treatment and later to the Captain's Office to complete a voluntary statement and an incident report.

{¶14} Plaintiff did not present the magistrate with evidence that defendant had actual notice that the lighting fixture would detach and fall from the ceiling. Indeed, no one who testified at trial was aware of lighting fixtures falling from the ceiling in housing unit C2 at PCI prior to June 22, 2014. Additionally, no one testified that there was any warning or indication that the lighting fixture above plaintiff's bunk would fall.

{¶15} Plaintiff failed to prove by a preponderance of the evidence that defendant had constructive notice that the lighting fixture would detach from the ceiling and fall. There is no evidence that the lighting fixture was improperly installed or designed. While the building may have been aging, no witness testified that any other lighting fixture appeared loose or that there were other lighting fixtures in C2 that had fallen prior

to June 22, 2014. Additionally, both plaintiff and McIntosh indicated that the lighting fixture fell without warning, and plaintiff testified that he never noticed whether the lighting fixture was loose prior to the fall. Although plaintiff presented evidence that the plastic covers of the lights might fall on occasion, the magistrate finds that such evidence does not support the conclusion that defendant had actual or constructive notice that the lighting fixture in C2, Bay 2 would detach from the ceiling and fall.

{¶16} Plaintiff argues that defendant failed to properly maintain or inspect the lighting in C2. However, the magistrate finds that Stephenson routinely looked for potential safety issues on his regular rounds of the housing unit. Additionally, McLaughlin credibly testified that he is constantly inspecting buildings anytime he is in the area. Moreover, there is no evidence as to why the lighting fixture fell such that a routine inspection would have uncovered any potential defect in the lighting fixture.

{¶17} Plaintiff argues that the doctrine of res ipsa loquitur is applicable in this case. The doctrine of res ipsa loquitur "permits an inference of negligence on the part of the defendant to be drawn from the factual circumstances surrounding the injury to the plaintiff. * * * 'To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.'" *Hickey v. Otis Elevator Co.*, 163 Ohio App.3d 765, 2005-Ohio-4279, ¶ 24 (10th Dist.), quoting *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67 (1970).

{¶18} The magistrate finds, however, that the lighting fixture was not under the exclusive control of defendant. Indeed, the magistrate finds that inmates would occasionally tamper with the lighting fixtures and metal conduit piping to which the

fixtures are attached in order to achieve improved television signals. Additionally, there is no evidence establishing the reason that the lighting fixture fell.

{¶19} In short, the magistrate finds that plaintiff failed to prove his claim by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

cc:

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

Timothy M. Miller
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed June 23, 2016**
**Sent to S.C. Reporter 8/3/16**