JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants Jerome and Laurel Alden ("plaintiffs") appeal from the decision of the Common Pleas Court that granted defendants-appellees Phifer Wire Systems, Inc.'s ("Phifer") and Albert Herman Draperies, Inc.'s ("Herman"), motions for summary judgment in this toxic tort product liability case. For the reasons that follow, we affirm.
 {¶ 2} Plaintiff Jerome Alden alleges that he sustained injuries as a result of his exposure to toxic compounds that emanated from window shades installed at his workplace in October 1998. Plaintiff maintains that Phifer manufactured, and Herman installed, the shades at his workplace.
 {¶ 3} Dr. David Preston opined that Jerome suffered from "encephalopathy and/or peripheral neuropathy as a direct and proximate result of exposure to a number of organic compounds, including phenols, * * * which [Dr. Preston] under[stood] emanated form [sic] a new set of screen shades which were installed along a wall of windows in his department." Dr. Cynthia Griggins, by affidavit, opined that Jerome "has cognitive problems which are attributable to toxic exposure he [plaintiff] described."
 {¶ 4} Plaintiffs also submitted an affidavit from Jerome that incorporated an "Indoor Air Quality Evaluation of wire Screen" that was prepared on March 1, 1995 ("Air Quality Evaluation"). The Air Quality Evaluation was prepared by Air Quality Sciences, Inc. ("AQS") and reported the "results of [a] environmental chamber evaluation of `wire screen' samples for Phifer Wire Products, Inc." AQS conducted the environmental tests over a 96-hour period at a temperature of 120° Farenheit. The Interpretive Report expressly provided that "[i]t must be noted that these regulatory lists only provide a statement regarding possible health effects associated with these compounds, and do not provide information on the risks of exposure. Proper interpretation of the risks associated with exposure to a given regulated compound requires a more detailed evaluation of toxicological activity."
 {¶ 5} Plaintiffs also produced the Material Safety Data Sheet for Sheer Weave 4000® that indicates "short-term harmful health effects are not expected from vapor generated during normal use with adequate ventilation at ambient temperatures." The undisputed evidence establishes that the HVAC system at Jerome's workplace was in good working order on October 26, 1998. The record also contains affidavits from some of Jerome's co-workers who noticed a vinyl odor at the workplace on October 26, 1998.
 {¶ 6} Phifer and Herman filed motions for summary judgment, which plaintiffs opposed but the trial court granted. The trial court concluded that plaintiffs failed to present evidence as to the required elements of their product liability claim. The court found lacking an expert report on the issue of product defect and/or any direct evidence to establish that the product in question was defective. Plaintiffs appeal presents the following two assignments of error for our review, which we address together.
 {¶ 7} "I. The trial court committed reversible error by granting appellee, Phifer Wire Products, Inc.'s motion for summary judgment.
 {¶ 8} "II. The trial court committed reversible error by granting appellee, Albert Herman Draperies, Inc.'s motion for summary judgment."
 {¶ 9} We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment (1998),124 Ohio App.3d 581, 585.
 {¶ 10} Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274." Zivichv. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70, 1998-Ohio-389.
 {¶ 11} Plaintiffs must establish the following elements to maintain a product liability claim based upon a design defect: "`(1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.'" State Farm Fire Casualty Co. v.Chrysler Corp. (1988), 37 Ohio St.3d 1, 6, quoting State Auto. Mut. Ins.Co. v. Chrysler Corp. (1973), 36 Ohio St.2d 151, * * * paragraph two of the syllabus. The trial court granted both Phifer's (the manufacturer) and Herman's (the supplier) motions for summary judgment for the same reason: plaintiff failed to present sufficient evidence that the solar shades were defective. We agree.
 {¶ 12} "Product defects may be proven by direct or circumstantial evidence. Where direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." Id.
 {¶ 13} Plaintiffs can establish a design defect under the "riskbenefit standard" of R.C. 2307.75(A)(1) or the "consumer-expectation standard" of R.C. 2307.75(A)(2).
 {¶ 14} "(A) A product is defective in design or formulation if either of the following applies:
 {¶ 15} "(1) When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation * * * exceeded the benefits associated with that design or formulation * * *
 {¶ 16} "(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." R.C.2307.35(A)(1) (2).
 {¶ 17} Defendants assert expert testimony is needed to support the claim that the solar shades were defective because they emitted toxic odors and that this proximately caused plaintiff's injuries. Plaintiffs claim that the defect is provable by circumstantial evidence. In particular, plaintiffs rely on Jerome's neurological injuries and that he smelled a "noticeable vinyl odor in the air" after the solar shades were installed at his workplace. Plaintiffs speculate the odors caused his injuries. This speculation is not enough.
 {¶ 18} "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury." Darnell v. Eastman (1970),23 Ohio St.2d 13.
 {¶ 19} "[T]o prove that a toxic substance caused the plaintiff's medical condition, the plaintiff must establish both that (1) the toxic substance is capable of causing the condition (general causation); and (2) the toxic substance in fact caused the plaintiff's medical condition (specific causation). * * * Expert testimony ordinarily will be required to prove both general and specific causation." Valentine v. PPG Indus.,158 Ohio App.3d 615, 626-627, 2004-Ohio-4521, ¶ 17.
 {¶ 20} Plaintiffs' experts merely opined that Jerome suffered injury as a result of exposure to toxins. The experts assumed the toxins came from the shades. A critical connection between the shades and a defect relative to harmful levels of chemical "outgassing" is lacking.
 {¶ 21} The potential harmful effects of chemical "outgassing" from a product manufactured with phenol is not within common knowledge. It is not commonly known what concentrations of what chemicals would be harmful and/or under what circumstances the "outgassing" would occur to consider a product defective.[1] E.g., In re Meridia Prods. Liab. Litigation
(N.D.Ohio 2004), 328 F.Supp.2d 791, 798 ("[t]he causation inquiry in toxic tort cases is more complicated because the injuries themselves are usually not immediately obvious and the connection between exposure and injury is not a matter of common sense or everyday experience.") Plaintiffs did not establish that the shades emitted phenols in any concentration or form or that this was the proximate cause of Jerome's injuries.
 {¶ 22} The trial court did not err by granting summary judgment to defendants where the record did not contain evidence sufficient to establish the requisite elements of plaintiffs' claim.
 {¶ 23} Assignments of Error I and II are overruled. Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Gallagher, J., concur.
[1] Plaintiffs rely on State Farm Cas. v. Black Decker, Cuyahoga App. No. 79573, 2002-Ohio-5821 for the proposition that direct evidence is not required to establish a defect. In Black Decker, the coffee maker in question was destroyed in a fire and could not be tested. Id. at ¶ 15 ("Dolence testified that he had no direct evidence of this switch's malfunction because the switch itself was destroyed during the course of the fire.") In this case, the shades were not destroyed and could have been examined by an expert to establish the alleged defect.