JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Emin G. Turker, individually and as administrator of the estate of Melda Turker, appeals from the decision of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of appellees Ford Motor Company and T.E. Clark Ford, Inc. For the reasons stated herein, we affirm.
 {¶ 2} Emin Turker ("Turker") and his wife, Melda Turker, commenced this action in July 2004. The Turkers alleged that Mrs. Turker was injured in an automobile accident in September 2003 when the 2001 Ford Taurus she was driving suddenly accelerated and ultimately crashed. The Turkers claimed that the 2001 Ford Taurus was defective and that the alleged defects were the proximate cause of Mrs. Turker's injuries. The Turkers raised various claims in their complaint, predicated upon product liability, breach of warranty, punitive damages, and others.
 {¶ 3} Mrs. Turker passed away after this suit was filed. Her death was apparently unrelated to the motor vehicle accident in this case. She did not provide any sworn testimony prior to her death regarding the facts and circumstances of the accident.
 {¶ 4} Following the completion of fact discovery and the disclosure of expert witnesses, appellees moved for summary judgment. In their motion, appellees challenged the admissibility of the expert testimony proffered by Turker. The expert witnesses included Samuel J. Sero, an electronics expert, and Dr. William Berg, a human factors expert. The trial court initially denied the motion. However, the court set a hearing to ascertain the admissibility of the expert witnesses' testimony. *Page 3 
 {¶ 5} At the hearing, Sero testified that he is a graduate of Carnegie Institute of Technology with a degree in electrical engineering. He considers himself to be a forensic engineer who has been doing forensic work since 1989. Sero opined that there are only two ways for a car to suddenly accelerate: either by the driver's putting his foot on the accelerator or by a malfunction in the cruise control. His theory is that sudden acceleration can be caused by an electromagnetic interference with the vehicle's cruise control system.
 {¶ 6} A chart compiled by Ford of alleged unexpected sudden acceleration was introduced that showed a significant increase in the number of such events in the year cruise control was introduced. However, Sero testified that Ford was not able to identify the cause of the problem and gave a "trouble not identified," or TNI, finding for these occurrences. Sero also stated that he was familiar with Ford testing that showed sudden acceleration to occur. Later, it was clarified that these events occurred after the cruise control was activated.
 {¶ 7} Sero conceded that reports by the National Highway Traffic Safety Administration ("NHTSA") have found that electromagnetic interference does not cause unintended acceleration events. Sero also conceded that a Canadian agency's report concluded that its study and all other studies known to it had confirmed that sudden acceleration was the result of driver error. He also conceded that testing done for a Japanese study did not result in one actuation of a cruise control device by electromagnetic interference. *Page 4 
 {¶ 8} Sero also testified that although he was aware of articles concerning the interaction of electromagnetic signals with components in a vehicle, he was not aware of any endorsed or published materials stating that electromagnetic interference can activate cruise control devices. Sero further stated that he had conducted tests to activate the cruise control through electromagnetic interference, none of which were successful. Sero agreed that he has testified in other cases regarding electromagnetic interference, and sometimes his testimony has been excluded while in other instances it has been allowed.
 {¶ 9} Sero testified that he was not able to identify any evidence of a malfunction in the Turker vehicle. However, Turker claimed that evidence of this type of event could not be seen. Sero admitted that he had not inspected the area where the accident occurred or investigated the nature of the accident.
 {¶ 10} Sero was unable to inform the court if he had an opinion to a reasonable degree of engineering certainty regarding the source of the electromagnetic interference in this accident, other than to say it was from within the vehicle. Sero indicated that he has held his theory for fifteen years.
 {¶ 11} At the conclusion of the evidentiary hearing, the trial court determined that Sero's testimony would not meet the criteria of Evid. R. 702. Specifically, the trial court determined that it had not been shown that Sero's testimony was based on reliable or dependable scientific, technical or specialized information. The court further found that without this expert testimony, Turker would be unable to prove his *Page 5 
case. Thereupon, appellees renewed their motion for summary judgment and the trial court granted the motion.
 {¶ 12} Turker has appealed the trial court's ruling. We note that despite listing five assignments of error for review at the beginning of his brief, Turker condenses these assignments to two in his table of contents and in the substance of his brief. We shall review the assignments as they are presented in the substance of the brief. Turker's first assignment of error provides the following:
 {¶ 13} "I. It was reversible error to have excluded the testimony of plaintiff-appellant's expert, Samuel J. Sero, P.E."
 {¶ 14} The standard of review to be applied to a trial court's determination on the admissibility of expert opinion is as follows: "The determination of the admissibility of expert testimony is within the discretion of the trial court. Evid. R. 104(A). Such decisions will not be disturbed absent abuse of discretion. `Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of [a reviewing court] to substitute its judgment for that of the trial court." Valentine v. Conrad,110 Ohio St.3d 42, 44, 2006-Ohio-3561 (internal citations omitted).
 {¶ 15} Turker raises several issues under this assignment of error. First, Turker claims that the trial court abused its discretion by failing to provide a reasoned explanation for its decision to exclude Sero's testimony. We find this argument to be without merit. Turker acknowledges that there are no cases in Ohio *Page 6 
that hold that a trial court is required to set forth findings in determining the admissibility of expert testimony. Also, there is nothing within the Rules of Evidence or Rules of Civil Procedure that requires such findings be made.
 {¶ 16} Nevertheless, a review of the transcript reflects that the trial court considered the requirements of Evid. R. 702 for the admissibility of expert testimony. Evid. R. 702 provides the following:
"A witness may testify as an expert if all of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
After discussing each of these conditions, the trial court found that Turker had failed to establish that Sero's testimony was based on reliable, technical, or other specialized information, which is the third condition for admissibility under Evid. R. 702. The trial court set forth its rationale in reaching this conclusion. We find no abuse of discretion by the trial court with respect to this issue.
 {¶ 17} Turker proceeds to argue that the trial court erred with respect to its reliability determination. There is no set test for determining reliability. The Ohio Supreme Court has specifically rejected the "general acceptance" within a relevant *Page 7 
scientific community test relied upon in Frye v. United States
(D.C.App. 1923), 54 App. D.C. 46, 293 F. 1013. See State v. Williams (1983),4 Ohio St.3d 53. However, the Ohio Supreme Court has held that "[i]n determining whether the opinion of an expert is reliable under Evid. R. 702(C), a trial court examines whether the expert's conclusion is based on scientifically valid principles and methods. A court should not focus on whether the expert opinion is correct or whether the testimony satisfies the proponent's burden of proof at trial. Accordingly, we are not concerned with the substance of the experts' conclusions; our focus is on how the experts arrived at their conclusions." Valentine,110 Ohio St.3d at 44, citing Miller v. Bike Athletic Co., 80 Ohio St.3d 607,1998-Ohio-178. Accordingly, our focus is on the journey to the conclusion, not the conclusion itself.
 {¶ 18} Nevertheless, we caution that simply because an expert's opinion is based upon valid principles and methods from within his field of study, this does not per se establish the legal reliability of the opinion being offered. In determining reliability, a court is to examine the validity of the principles and methods used. However, even when these principles and methods are valid, they may not be a reliable basis for establishing legal causation. The journey may be flawed if a reliable connection between the data and the conclusion is not established. As stated in Valentine, 110 Ohio St.3d at 44-45: "Experts often base their opinions on data and research from within their field of study. Evid. R. 702(C) requires not only that those underlying resources are scientifically valid, but also that they support the *Page 8 
opinion. Although scientists certainly may draw inferences from a body of work, trial courts must ensure that any such extrapolation accords with scientific principles and methods. In this respect, we find persuasive Gen. Elec. Co. v. Joiner. In Joiner, the United States Supreme Court, in discussing the reliability requirements of Fed.R.Evid.702, stated, `A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' Gen. Elec.Co. v. Joiner, 522 U.S. at 146, 118 S.Ct. 512, 139 L.Ed.2d 508."
 {¶ 19} Thus, it has been stated that a trial court is to act as a gatekeeper and examine the principles and methodology that underlie an expert's opinion to determine if the expert is capable of rendering scientifically reliable testimony. See Valentine, 110 Ohio St.3d at 44. In conducting this reliability evaluation, the Ohio Supreme Court has found that the factors set forth in Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 593-594, should be considered. State v. Nemeth, 82 Ohio St.3d 202, 211, 1998-Ohio-376;Miller, 80 Ohio St.3d at 611. The Daubert factors include the following: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. Miller, 80 Ohio St.3d at 611; Daubert, 509 U.S. at 593. While none of these factors is a determinative prerequisite to admissibility, these factors may aid in determining reliability. SeeNemeth, 82 Ohio St.3d at 211; Miller, 80 Ohio St.3d at 611. *Page 9 
 {¶ 20} Turker claims that Sero's theory is based on sound and common engineering principles and has gained general acceptance. He also states that Sero has applied well-known principles and widely accepted engineering protocol in reaching his conclusion. Turker points to several cases where Sero has been allowed to testify. He states that it has been accepted that electronic malfunctions can occur in automobiles and can cause a throttle to open. He claims that there is no requirement for Sero's theory to have been peer reviewed. He also states that Ford presented no evidence to attack the reliability of Sero's methodology and that it was for the jury to weigh the sufficiency of Sero's testimony.
 {¶ 21} Appellees argue that Sero's theory that electromagnetic interference can activate a cruise control device and cause sudden acceleration is untested and unproven. Not only did Sero's own tests fail to prove his theory, but no studies have been shown to support it. Also, no published articles accepting the theory were identified, and no known rate of error was able to be established. The appellees also challenge Sero's position that the theory has gained general acceptance. Appellees claim not only is there an absence of any published articles accepting the theory, but also, there was evidence that investigations by government agencies from the United States, Canada and Japan have failed to find that electromagnetic interference can activate a cruise control device and cause a vehicle to suddenly accelerate. Appellees acknowledge that a reliability inquiry is a flexible one and that theDaubert factors are not prerequisites to the determination. Appellees refer to *Page 10 
various cases where Sero's testimony has been excluded. Appellees state that the record in this case does not show that Sero can express his opinion to a reasonable degree of scientific certainty.
 {¶ 22} Insofar as Turker claims the trial court invaded the province of the jury in this matter, we reject this argument. As the Ohio Supreme Court has stated: "A decision not to admit expert evidence under Evid. R. 702 does not invade the province of the jury. Instead, such a decision prevents the jury from considering information that would not assist in rendering a verdict founded on reliable expert evidence."Valentine, 110 Ohio St.3d at 45.
 {¶ 23} Also, we recognize that some jurisdictions have permitted Sero's expert testimony while others have excluded it. However, we are not bound by the decisions of other cases, and we review this matter to determine if the trial court abused its discretion in excluding the testimony upon the record presented and pursuant to the applicable law in Ohio.
 {¶ 24} We reiterate that the trial court's decision in this matter is reviewed for an abuse of discretion. The trial court determined that it had not been shown that Sero was capable of rendering scientifically reliable testimony. The court noted that Sero has held his theory for fifteen years but he was unaware of any articles written about the theory. The court also recognized that there was no showing of any procedure, test, or experiment that had been performed that demonstrates electromagnetic interference can cause a cruise control malfunction resulting in *Page 11 
sudden acceleration. Upon the record before us, we find no abuse of discretion in the trial court's determination.
 {¶ 25} The record supports the trial court's determination that Turker failed to establish that Sero's theory — that electromagnetic interference could have affected the cruise control and caused the vehicle to suddenly accelerate — was based on a reliable scientific foundation. Although Sero's theory may have been based on valid scientific principles and methods, there was a lack of evidence showing a reliable connection between this data and the opinion proffered. Simply put, the principles and methodology utilized by Sero did not establish the legal reliability of his opinion. The journey to his conclusion was flawed. There was a lack of evidence that Sero's theory had been published, subjected to peer review, or generally accepted by the scientific community. He testified that he had not tested his theory successfully. Other studies have rejected Sero's conclusions. There was simply a lack of evidence showing a causal connection between an electromagnetic interference and a cruise control malfunction resulting in sudden acceleration and an absence of any verification of the validity of the theory. We conclude that the judge could permissibly determine that Sero's testimony was inadmissible and that the court committed no abuse of discretion.
 {¶ 26} Turker's first assignment of error is overruled.
 {¶ 27} Turker's second assignment of error provides as follows:
 {¶ 28} "II. The trial court made an error of law in granting defendants' motion *Page 12 
for summary judgment."
 {¶ 29} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga County Comm. College, 150 Ohio App.3d 169,2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Dussell v. Lakewood PoliceDepartment, 99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State exrel. Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191,1996-Ohio-326.
 {¶ 30} Turker argues that the trial court erred in granting summary judgment because in this case the defect could be proved by circumstantial evidence. Turker claims that he intended to offer testimony from Dr. William Berg, whose analysis essentially "ruled out" any human factor as the cause of the accident. Turker asserts that by ruling out human error, the only other explanation could be a defect in the cruise control.
 {¶ 31} In order to maintain a product liability action involving a defect in an automobile, a plaintiff must prove by a preponderance of the evidence that "`(1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendants; and *Page 13 
(3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.'" State Farm Fire Cas. Co. v. Chrysler Corp. (1988),37 Ohio St.3d 1, 5-6, 523, quoting State Auto. Mut. Ins. Co. v. ChryslerCorp. (1973), 36 Ohio St.2d 151, paragraph two of the syllabus. While a product defect may be proved by direct or circumstantial evidence, "`it remains incumbent upon a plaintiff to establish the element of causation — to prove by a preponderance of the evidence that it was some aspect of the challenged design which rendered the product's performance less safe than the ordinary consumer would expect, resulting in injury.'"Hamilton Mut. Ins. Co. v. Ford Motor Co. (1997), 122 Ohio App.3d 611,616, quoting State Farm Fire Cas. Co., 37 Ohio St.3d at 7. Further, "[e]xpert testimony ordinarily will be required to prove both general and specific causation." Alden v. Phifer Wire Products, Inc., Cuyahoga App. No. 85064, 2005-Ohio-3014 (citation omitted).
 {¶ 32} In this case, there is an absence of admissible testimony demonstrating that the vehicle "in fact" had a defect and that the defect existed at the time the product left the hands of the manufacturer. Further, there is no evidence to show that it was some aspect of the vehicle's design that caused Mrs. Turker's injuries. Even if Dr. Berg's testimony were allowed, he is a human factors expert who intended to opine that Mrs. Turker did not cause the accident. Contrary to Turker's position, this alone is insufficient for Turker to meet his burden of proof, even by circumstantial evidence, with respect to establishing an actual defect in the motor vehicle that was a proximate cause of Mrs. Turker's injuries. Dr. Berg is not *Page 14 
qualified to testify or render opinions concerning electrical components in a motor vehicle.
 {¶ 33} Accordingly, we find the trial court did not err by granting summary judgment to appellees when the record did not contain evidence sufficient to establish the requisite elements of Turker's claim. Turker's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A. J., and PATRICIA ANN BLACKMON, J., concur. *Page 1